# BEACON THEATRES, INC., *v.* WESTOVER, U. S. DISTRICT JUDGE, ET AL.

No. 45.  Argued December 10, 1958.—Decided May 25, 1959.

*Jack Corinblit* argued the cause for petitioner. With him on the brief was *Elwood S. Kendrick.*

*Frank R. Johnston* argued the cause for respondents. With him on the brief was *Hudson B. Cox.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner, Beacon Theatres, Inc., sought by mandamus to require a district judge in the Southern District of California to vacate certain orders alleged to deprive it of a jury trial of issues arising in a suit brought against it by Fox West Coast Theatres, Inc. The Court of Appeals for the Ninth Circuit refused the writ, holding that the trial judge had acted within his proper discretion in denying petitioner's request for a jury. 252 F. 2d 864. We granted certiorari, 356 U. S. 956, because "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick* v. *Schiedt,* 293 U. S. 474, 486.

Fox had asked for declaratory relief against Beacon alleging a controversy arising under the Sherman Antitrust Act, 26 Stat. 209, as amended, 15 U. S. C. §§ 1, 2, and under the Clayton Act, 38 Stat. 731, 15 U. S. C. § 15, which authorizes suits for treble damages against Sherman Act violators. According to the complaint Fox operates a movie theatre in San Bernardino, California, and has long been exhibiting films under contracts with movie distributors. These contracts grant it the exclusive right to show "first run" pictures in the "San Bernardino competitive area" and provide for "clearance"—a period of time during which no other theatre can exhibit the same pictures. After building a drive-in theatre about 11 miles from San Bernardino, Beacon notified Fox that it considered contracts barring simultaneous exhibitions of first-run films in the two theatres to be overt acts in violation of the antitrust laws.[1] Fox's complaint alleged that this notification, together with threats of treble damage suits against Fox and its distributors, gave rise to "duress and coercion" which deprived Fox of a valuable property right, the right to negotiate for exclusive first-run contracts. Unless Beacon was restrained, the complaint continued, irreparable harm would result. Accordingly, while its pleading was styled a "Complaint for Declaratory Relief," Fox prayed both for a declaration that a grant of clearance between the Fox and Beacon theatres is reasonable and

---

[1] Beacon allegedly stated that the clearances granted violated both the antitrust laws and the decrees issued in *United States* v. *Paramount Pictures, Inc.*, 66 F. Supp. 323, 70 F. Supp. 53, affirmed in part and reversed in part, 334 U. S. 131, subsequent proceedings in the District Court, 85 F. Supp. 881. The decrees in that case set limits on what clearances could be given when theatres were in competition with each other and held that there should be no clearances between theatres not in substantial competition. Neither Beacon nor Fox, however, appears to have been a party to those decrees. Their relevance, therefore, seems to be only that of significant precedents.

not in violation of the antitrust laws, and for an injunction, pending final resolution of the litigation, to prevent Beacon from instituting any action under the antitrust laws against Fox and its distributors arising out of the controversy alleged in the complaint.[2] Beacon filed an answer, a counterclaim against Fox, and a cross-claim against an exhibitor who had intervened. These denied the threats and asserted that there was no substantial competition between the two theatres, that the clearances granted were therefore unreasonable, and that a conspiracy existed between Fox and its distributors to manipulate contracts and clearances so as to restrain trade and monopolize first-run pictures in violation of the antitrust laws. Treble damages were asked.

Beacon demanded a jury trial of the factual issues in the case as provided by Federal Rule of Civil Procedure 38 (b). The District Court, however, viewed the issues raised by the "Complaint for Declaratory Relief," including the question of competition between the two theatres, as essentially equitable. Acting under the purported authority of Rules 42 (b) and 57, it directed that these issues be tried to the court before jury determination of the validity of the charges of antitrust violations made in the counterclaim and cross-claim.[3] A common issue of the "Complaint for Declaratory Relief," the counterclaim, and the cross-claim was the reasonableness of the clearances granted to Fox, which depended, in part, on the

[2] Other prayers aside from the general equitable plea for "such further relief as the court deems proper" added nothing material to those set out.

[3] Fed. Rules Civ. Proc., 42 (b) reads: "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues." Rule 57 reads in part: "The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar."

existence of competition between the two theatres. Thus the effect of the action of the District Court could be, as the Court of Appeals believed, "to limit the petitioner's opportunity fully to try to a jury every issue which has a bearing upon its treble damage suit," for determination of the issue of clearances by the judge might "operate either by way of res judicata or collateral estoppel so as to conclude both parties with respect thereto at the subsequent trial of the treble damage claim." 252 F. 2d, at 874.

The District Court's finding that the Complaint for Declaratory Relief presented basically equitable issues draws no support from the Declaratory Judgment Act, 28 U. S. C. §§ 2201, 2202; Fed. Rules Civ. Proc., 57. See also 48 Stat. 955, 28 U. S. C. (1940 ed.) § 400. That statute, while allowing prospective defendants to sue to establish their nonliability, specifically preserves the right to jury trial for both parties.[4] It follows that if Beacon would have been entitled to a jury trial in a treble damage suit against Fox it cannot be deprived of that right merely because Fox took advantage of the availability of declaratory relief to sue Beacon first. Since the right to trial by jury applies to treble damage suits under the antitrust laws, and is, in fact, an essential part of the congressional plan for making competition rather than monopoly the rule of trade, see *Fleitmann* v. *Welsbach Street Lighting Co.*, 240 U. S. 27, 29, the Sherman and Clayton Act issues on which Fox sought a declaration were essentially jury questions.

Nevertheless the Court of Appeals refused to upset the order of the district judge. It held that the question of whether a right to jury trial existed was to be judged

---

[4] See, *e. g.*, *(American) Lumbermens Mut. Cas. Co.* v. *Timms & Howard, Inc.*, 108 F. 2d 497; *Hargrove* v. *American Cent. Ins. Co.*, 125 F. 2d 225; *Johnson* v. *Fidelity & Casualty Co.*, 238 F. 2d 322. See Fed. Rules Civ. Proc., 57, 38, 39.

by Fox's complaint read as a whole. In addition to seeking a declaratory judgment, the court said, Fox's complaint can be read as making out a valid plea for injunctive relief, thus stating a claim traditionally cognizable in equity. A party who is entitled to maintain a suit in equity for an injunction, said the court, may have all the issues in his suit determined by the judge without a jury regardless of whether legal rights are involved. The court then rejected the argument that equitable relief, traditionally available only when legal remedies are inadequate, was rendered unnecessary in this case by the filing of the counterclaim and cross-claim which presented all the issues necessary to a determination of the right to injunctive relief. Relying on *American Life Ins. Co.* v. *Stewart,* 300 U. S. 203, 215, decided before the enactment of the Federal Rules of Civil Procedure, it invoked the principle that a court sitting in equity could retain jurisdiction even though later a legal remedy became available. In such instances the equity court had discretion to enjoin the later lawsuit in order to allow the whole dispute to be determined in one case in one court.[5] Reasoning by analogy, the Court of Appeals held it was not an abuse of discretion for the district judge, acting under Federal Rule of Civil Procedure 42 (b), to try the equitable cause first even though this might, through collateral estoppel, prevent a full jury trial of the counterclaim and cross-claim which were as effectively stopped as by an equity injunction.[6]

---

[5] Compare *Enelow* v. *New York Life Ins. Co.,* 293 U. S. 379, with *American Life Ins. Co.* v. *Stewart,* 300 U. S. 203. See also *City of Morgantown* v. *Royal Ins. Co.,* 337 U. S. 254; *Peake* v. *Lincoln Nat. Life Ins. Co.,* 15 F. 2d 303.

[6] 252 F. 2d, at 874. In *Ettelson* v. *Metropolitan Life Ins. Co.,* 317 U. S. 188, 192, this Court recognized that orders enabling equitable causes to be tried before legal ones had the same effect as injunctions. In *City of Morgantown* v. *Royal Ins. Co.,* 337 U. S. 254, the Court denied at least some such orders the status of injunctions for the pur-

Beacon takes issue with the holding of the Court of Appeals that the complaint stated a claim upon which equitable relief could be granted. As initially filed the complaint alleged that threats of lawsuits by petitioner against Fox and its distributors were causing irreparable harm to Fox's business relationships. The prayer for relief, however, made no mention of the threats but asked only that pending litigation of the claim for declaratory judgment, Beacon be enjoined from beginning any lawsuits under the antitrust laws against Fox and its distributors arising out of the controversy alleged in the complaint. Evidently of the opinion that this prayer did not state a good claim for equitable relief, the Court of Appeals construed it to include a request for an injunction against threats of lawsuits. This liberal construction of a pleading is in line with Rule 8 of the Federal Rules of Civil Procedure. See *Conley* v. *Gibson,* 355 U. S. 41, 47–48. But this fact does not solve our problem. Assuming that the pleadings can be construed to support such a request and assuming additionally that the complaint can be read as alleging the kind of harassment by a multiplicity of lawsuits which would *traditionally* have justified equity to take jurisdiction and settle the case in one suit,[7] we are nevertheless of the opinion that, under the Declaratory Judgment Act and the Federal Rules of Civil Procedure, neither claim can justify denying Beacon a trial by jury of all the issues in the antitrust controversy.

The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal

poses of appealability. It did not, of course, imply that when the orders came to be reviewed they would be examined any less strictly than injunctions. 337 U. S., at 258.

[7] See, *e. g., Smyth* v. *Ames,* 169 U. S. 466, 515; *Detroit* v. *Detroit Citizens' Street R. Co.,* 184 U. S. 868, 378–382; cf. *Matthews* v. *Rodgers,* 284 U. S. 521.

remedies.[8]  At least as much is required to justify a trial court in using its discretion under the Federal Rules to allow claims of equitable origins to be tried ahead of legal ones, since this has the same effect as an equitable injunction of the legal claims.  And it is immaterial, in judging if that discretion is properly employed, that before the Federal Rules and the Declaratory Judgment Act were passed, courts of equity, exercising a jurisdiction separate from courts of law, were, in some cases, allowed to enjoin subsequent legal actions between the same parties involving the same controversy.  This was because the subsequent legal action, though providing an opportunity to try the case to a jury, might not protect the right of the equity plaintiff to a fair and orderly adjudication of the controversy.  See, *e. g., New York Life Ins. Co.* v. *Seymour,* 45 F. 2d 47.  Under such circumstances the legal remedy could quite naturally be deemed inadequate. Inadequacy of remedy and irreparable harm are practical terms, however.  As such their existence today must be determined, not by precedents decided under discarded procedures, but in the light of the remedies now made available by the Declaratory Judgment Act and the Federal Rules.[9]

---

[8] *E. g., Pennsylvania* v. *Wheeling & Belmont Bridge Co.,* 13 How. 518, 561; *Parker* v. *Winnipiseogee Lake Cotton & Woollen Co.,* 2 Black 545, 551; *Enelow* v. *New York Life Ins. Co.,* 293 U. S. 379.

[9] See, *e. g.,* Cook, Cases on Equity (4th ed.), 18; 4 Pomeroy, Equity Jurisprudence (5th ed.), § 1370; 5 Moore, Federal Practice, 154–158; Morris, Jury Trial Under the Federal Fusion of Law and Equity, 20 Tex. L. Rev. 427, 441–443.  Cf. *Maryland Theater Corp.* v. *Brennan,* 180 Md. 377, 389, 24 A. 2d 911; *Hasselbring* v. *Koepke,* 263 Mich. 466, 248 N. W. 869.  But cf. 1 Pomeroy, Equity Jurisprudence (5th ed.), §§ 182, 183.  Significantly the Court of Appeals itself relied on the procedural changes brought about by the Federal Rules when it found the plea for equitable relief valid, for it did so by relying on *Conley* v. *Gibson,* 355 U. S. 41, which emphasized the liberal construction policies of the Rules.

Viewed in this manner, the use of discretion by the trial court under Rule 42 (b) to deprive Beacon of a full jury trial on its counterclaim and cross-claim, as well as on Fox's plea for declaratory relief, cannot be justified. Under the Federal Rules the same court may try both legal and equitable causes in the same action. Fed. Rules Civ. Proc., 1, 2, 18. Thus any defenses, equitable or legal, Fox may have to charges of antitrust violations can be raised either in its suit for declaratory relief or in answer to Beacon's counterclaim. On proper showing, harassment by threats of other suits, or other suits actually brought, involving the issues being tried in this case, could be temporarily enjoined pending the outcome of this litigation. Whatever permanent injunctive relief Fox might be entitled to on the basis of the decision in this case could, of course, be given by the court after the jury renders its verdict. In this way the issues between these parties could be settled in one suit giving Beacon a full jury trial of every antitrust issue. Cf. *Ring* v. *Spina,* 166 F. 2d 546. By contrast, the holding of the court below while granting Fox no additional protection unless the avoidance of jury trial be considered as such, would compel Beacon to split his antitrust case, trying part to a judge and part to a jury.[10] Such a result, which involves the postponement and subordination of Fox's own legal claim for declaratory relief as well as of the counterclaim which Beacon was compelled by the Federal Rules to bring,[11] is not permissible.

Our decision is consistent with the plan of the Federal Rules and the Declaratory Judgment Act to effect

---

[10] Since the issue of violation of the antitrust laws often turns on the reasonableness of a restraint on trade in the light of all the facts, see, *e. g., Standard Oil Co.* v. *United States,* 221 U. S. 1, 60, it is particularly undesirable to have some of the relevant considerations tried by one fact finder and some by another.

[11] Fed. Rules Civ. Proc., 13 (a).

substantial procedural reform while retaining a distinction between jury and nonjury issues and leaving substantive rights unchanged.[12] Since in the federal courts equity has always acted only when legal remedies were inadequate,[13] the expansion of adequate legal remedies provided by the Declaratory Judgment Act and the Federal Rules necessarily affects the scope of equity. Thus, the justification for equity's deciding legal issues once it obtains jurisdiction, and refusing to dismiss a case, merely because subsequently a legal remedy becomes available, must be re-evaluated in the light of the liberal joinder provisions of the Federal Rules which allow legal and equitable causes to be brought and resolved in one civil action.[14] Similarly the need for, and therefore, the availability of such equitable remedies as Bills of Peace, *Quia Timet* and Injunction must be reconsidered in view of the existence of the Declaratory Judgment Act as well as the liberal joinder provision of the Rules.[15] This is not only in accord with the spirit of the Rules and the Act

[12] See 28 U. S. C. § 2072; Fed. Rules Civ. Proc., 39 (a), 57. See also *Stainback* v. *Mo Hock Ke Lok Po*, 336 U. S. 368, 382, n. 26; *United States* v. *Yellow Cab Co.*, 340 U. S. 543, 555–556.

[13] See 36 Stat. 1163, derived from Act of Sept. 24, 1789, § 16, 1 Stat. 82. This provision, which antedates the Seventh Amendment, is discussed in 5 Moore, Federal Practice, 32. See, *e. g., Hipp* v. *Babin*, 19 How. 271, 277–278; *Insurance Co.* v. *Bailey*, 13 Wall. 616, 620–621; *Grand Chute* v. *Winegar*, 15 Wall. 373; *Buzard* v. *Houston*, 119 U. S. 347, 351–352.

[14] See Fed. Rules Civ. Proc., 1, 2, 18. Cf. *Prudential Ins. Co.* v. *Saxe*, 134 F. 2d 16, 31–34; Morris, Jury Trial Under the Federal Fusion of Law and Equity, 20 Tex. L. Rev. 427, 441–443.

[15] See 1 Pomeroy, Equity Jurisprudence (5th ed.), §§ 251¾, 254, 264 (b); 5 Moore, Federal Practice, 32; but cf. *id.*, 209–211. See also, Note, The Joinder Rules and Equity Jurisdiction in the Avoidance of a Multiplicity of Suits, 12 Md. L. Rev. 88. Of course, unless there is an issue of a right to jury trial or of other rights which depend on whether the cause is a "legal" or "equitable" one, the question of adequacy of legal remedies is purely academic and need not arise.

but is required by the provision in the Rules that "[t]he right to trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved . . . inviolate." [16]

If there should be cases where the availability of declaratory judgment or joinder in one suit of legal and equitable causes would not in all respects protect the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first. Since the right to jury trial is a constitutional one, however, while no similar requirement protects trials by the court,[17] that discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial. As this Court said in *Scott* v. *Neely,* 140 U. S. 106, 109–110: "In the Federal courts this [jury] right cannot be dispensed with, except by the assent of the parties entitled to it, nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action or during its pendency." [18] This longstanding principle of equity dictates that only under the

[16] Fed. Rules Civ. Proc., 38 (a). In delegating to the Supreme Court responsibility for drawing up rules, Congress declared that: "Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution." 28 U. S. C. § 2072. The Seventh Amendment reads: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

[17] See *Hurwitz* v. *Hurwitz,* 78 U. S. App. D. C. 66, 136 F. 2d 796, 798–799; cf. *The Genesee Chief* v. *Fitzhugh,* 12 How. 443, 459–460.

[18] This Court has long emphasized the importance of the jury trial. See *Parsons* v. *Bedford,* 3 Pet. 433, 446. See also *Galloway* v. *United States,* 319 U. S. 372. *Id.,* at 396 (dissenting opinion).

most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate,[19] can the right to a jury trial of legal issues be lost through prior determination of equitable claims. See *Leimer* v. *Woods,* 196 F. 2d 828, 833–836. As we have shown, this is far from being such a case.

Respondent claims mandamus is not available under the All Writs Act, 28 U. S. C. § 1651. Whatever differences of opinion there may be in other types of cases, we think the right to grant mandamus to require jury trial where it has been improperly denied is settled.[20]

The judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE FRANKFURTER took no part in the consideration or decision of this case.

MR. JUSTICE STEWART, with whom MR. JUSTICE HARLAN and MR. JUSTICE WHITTAKER concur, dissenting.

There can be no doubt that a litigant is entitled to a writ of mandamus to protect a clear constitutional or statutory right to a jury trial. But there was no denial of such a right here. The district judge simply exercised his inherent discretion, now explicitly confirmed by the Federal Rules of Civil Procedure, to schedule the trial of an equitable claim in advance of an action at law. Even an abuse of such discretion could not, I think, be attacked

---

[19] For an example of the flexible procedures available under the Federal Rules, see *Ring* v. *Spina,* 166 F. 2d 546, 550.

[20] *E. g., Ex parte Simons,* 247 U. S. 231, 239–240; *Ex parte Peterson,* 253 U. S. 300, 305–306; *Bereslavsky* v. *Caffey,* 161 F. 2d 499 (C. A. 2d Cir.); *Canister Co.* v. *Leahy,* 191 F. 2d 255 (C. A. 3d Cir.); *Black* v. *Boyd,* ?48 F. 2d 156, 160–161 (C. A. 6th Cir.). Cf. *Bruckman* v. *Hollzer,* 152 F. 2d 730 (C. A. 9th Cir.). But cf. *In re Chappell & Co.,* 201 F. 2d 343 (C. A. 1st Cir.). See also *La Buy* v. *Howes Leather Co.,* 352 U. S. 249.

by the extraordinary writ of mandamus.[1]  In any event no abuse of discretion is apparent in this case.

The complaint filed by Fox stated a claim traditionally cognizable in equity.  That claim, in brief, was that Beacon had wrongfully interfered with the right of Fox to compete freely with Beacon and other distributors for the licensing of films for first-run exhibition in the San Bernardino area.  The complaint alleged that the plaintiff was without an adequate remedy at law and would be irreparably harmed unless the defendant were restrained from continuing to interfere—by coercion and threats of litigation—with the plaintiff's lawful business relationships.

The Court of Appeals found that the complaint, although inartistically drawn, contained allegations entitling the petitioner to equitable relief.[2]  That finding is accepted in the prevailing opinion today.  If the complaint had been answered simply by a general denial, therefore, the issues would under traditional principles have been triable as a proceeding in equity.  Instead of just putting in issue the allegations of the complaint, however, Beacon filed pleadings which affirmatively alleged the existence of a broad conspiracy among the plaintiff and other theatre owners to monopolize the first-run exhibition of films in the San Bernardino area, to refrain from competing among themselves, and to discriminate against Beacon in granting film licenses.  Based upon these allegations, Beacon asked damages in the amount of $300,000.  Clearly these conspiracy allegations stated a cause of action triable as of right by a

---

[1] Compare *Black* v. *Boyd*, 248 F. 2d 156, with *Black* v. *Boyd*, 251 F. 2d 843.

[2] Cf. *De Groot* v. *Peters*, 124 Cal. 406; *California G. C. Bd.* v. *California P. Corp.*, 4 Cal. App. 2d 242, 244, 40 P. 2d 846.  Compare *Kessler* v. *Eldred*, 206 U. S. 285; *International News Serv.* v. *Associated Press*, 248 U. S. 215, 236; *Truax* v. *Raich*, 239 U. S. 33, 38.

jury. What was demanded by Beacon, however, was a jury trial not only of this cause of action, but also of the issues presented by the original complaint.

Upon motion of Fox the trial judge ordered the original action for declaratory and equitable relief to be tried separately to the court and in advance of the trial of the defendant's counterclaim and cross-claim for damages. The court's order, which carefully preserved the right to trial by jury upon the conspiracy and damage issues raised by the counterclaim and cross-claim, was in conformity with the specific provisions of the Federal Rules of Civil Procedure.[3] Yet it is decided today that the Court of Appeals must compel the district judge to rescind it.

Assuming the existence of a factual issue common both to the plaintiff's original action and the defendant's counterclaim for damages, I cannot agree that the District Court must be compelled to try the counterclaim first.[4]

---

[3] Rule 42 (b) provides: "(b) Separate Trials. The court in furtherance of convenience or to avoid prejudice may order a separate trial of any. claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

The Note to Rule 39 of the Advisory Committee on Rules states that, "When certain of the issues are to be tried by jury and others by the court, the court may determine the sequence in which such issues shall be tried." This language was at one time contained in a draft of the Rules, but was deleted because "the power is adequately given by Rule 42 (b). . . ." Moore's Federal Practice .(2d ed.) § 39.12, n. 8.

See also Rule 57, which provides, *inter alia*, that, "The court may order a speedy hearing of an action for. a declaratory judgment and may advance it on the calendar."

[4] It is not altogether clear at this stage of the proceedings whether the existence of substantial competition between Fox and Beacon is actually a material issue of fact common to both the equitable claim and the counterclaim for damages. The respondent ingeniously argues that determination in the equitable suit of the issue

It is, of course, a matter of no great moment in what order the issues between the parties in the present litigation are tried. What is disturbing is the process by which the Court arrives at its decision—a process which appears to disregard the historic relationship between equity and law.

I.

The Court suggests that "the expansion of adequate legal remedies provided by the Declaratory Judgment Act . . . necessarily affects the scope of equity." Does the Court mean to say that the mere availability of an action for a declaratory judgment operates to furnish "an adequate remedy at law" so as to deprive a court of equity of the power to act? That novel line of reasoning is at least implied in the Court's opinion. But the Declaratory Judgment Act did not "expand" the substantive law.

---

of competition between the theatres would be determinative of little or nothing in the counterclaim for damages. "The fact issue in the action for equitable and declaratory relief is whether the Fox West Coast California Theatre and the Petitioner's drive-in are substantially competitive with each other. The fact issue in the counterclaim is whether the cross-defendants and co-conspirators therein named conspired together in restraint of trade and to monopolize in the manner alleged in the counterclaim. Absent conspiracy, whether or not the distributors licensed a single first run picture to Petitioner's drive-in, be it in substantial competition or not in substantial competition with other first run theatres in the San Bernardino area, Petitioner will not have made out a case on its counterclaim. . . . If Petitioner on its counterclaim should fail to prove conspiracy the issue of competition between the theatres is meaningless. If Petitioner on the other hand succeeds in proving the allegations of its counterclaim, the conspiracy to monopolize first run and to discriminate against the new drive-in, the existence or non-existence of competition between the theatres would exculpate none of the alleged wrongdoers, although if there was an absence of competition between the drive-in and the other first run theatres, as Petitioner contended in its answer to the complaint, it might have some difficulty proving injury to its business."

That Act merely provided a new statutory remedy, neither legal nor equitable, but available in the areas of both equity and law. When declaratory relief is sought, the right to trial by jury depends upon the basic context in which the issues are presented. See Moore's Federal Practice (2d ed.) §§ 38.29, 57.30; Borchard, Declaratory Judgments (2d ed.), 399–404. If the basic issues in an action for declaratory relief are of a kind traditionally cognizable in equity, e. g., a suit for cancellation of a written instrument, the declaratory judgment is not a "remedy at law." [5] If, on the other hand, the issues arise in a context traditionally cognizable at common law, the right to a jury trial of course remains unimpaired, even though the only relief demanded is a declaratory judgment.[6]

Thus, if in this case the complaint had asked merely for a judgment declaring that the plaintiff's specified manner of business dealings with distributors and other exhibitors did not render it liable to Beacon under the antitrust laws, this would have been simply a "juxtaposition of parties" case in which Beacon could have demanded a jury trial.[7] But the complaint in the present case, as the Court recognizes, presented issues of exclusively equitable cognizance, going well beyond a mere defense to any subsequent action at law. Fox sought from the court protection against Beacon's allegedly unlawful interference with its business relationships—protection which this

---

[5] *State Farm Mut. Auto. Ins. Co.* v. *Mossey*, 195 F. 2d 56; *Connecticut General Life Ins. Co.* v. *Candimat Co.*, 83 F. Supp. 1.

[6] *Dickinson* v. *General Accident F. & L. Assur. Corp.*, 147 F. 2d 396; *Hargrove* v. *American Cent. Ins. Co.*, 125 F. 2d 225; *Pacific Indemnity Co.* v. *McDonald*, 107 F. 2d 446.

[7] Moore's Federal Practice (2d ed.) § 57.31 [2]. "Transposition of parties" would perhaps be a more accurate description. A typical such case is one in which a plaintiff uses the declaratory judgment procedure to seek a determination of nonliability to a legal claim asserted by the defendant. The defendant in such a case is, of course, entitled to a jury trial.

516

Court seems to recognize might not have been afforded by a declaratory judgment, unsupplemented by equitable relief. The availability of a declaratory judgment did not, therefore, operate to confer upon Beacon the right to trial by jury with respect to the issues raised by the complaint.

## II.

The Court's opinion does not, of course, hold or even suggest that a court of equity may never determine "legal rights." For indeed it is precisely such rights which the Chancellor, when his jurisdiction has been properly invoked, has often been called upon to decide. Issues of fact are rarely either "legal" or "equitable." All depends upon the context in which they arise. The examples cited by Chief Judge Pope in his thorough opinion in the Court of Appeals in this case are illustrative: ". . . [I]n a suit by one in possession of real property to quiet title, or to remove a cloud on title, the court of equity may determine the legal title. In a suit for specific performance of a contract, the court may determine the making, validity and the terms of the contract involved. In a suit for an injunction against trespass to real property the court may determine the legal right of the plaintiff to the possession of that property. Cf. Pomeroy, Equity Jurisprudence, 5th ed., §§ 138–221, 221a, 221b, 221d, 250." 252 F. 2d 864, 874.

Though apparently not disputing these principles, the Court holds, quite apart from its reliance upon the Declaratory Judgment Act, that Beacon by filing its counterclaim and cross-claim acquired a right to trial by jury of issues which otherwise would have been properly triable to the court. Support for this position is found in the principle that, "in the federal courts equity has always acted only when legal remedies were inadequate. . . ." Yet that principle is not employed in its traditional sense as a limitation upon the exercise of power by a court of

equity.   This is apparent in the Court's recognition that the allegations of the complaint entitled Fox to equitable relief—relief to which Fox would not have been entitled if it had had an adequate remedy at law.   Instead, the principle is employed today to mean that because it is possible under the counterclaim to have a jury trial of the factual issue of substantial competition, that issue must be tried by a jury, even though the issue was primarily presented in the original claim for equitable relief.   This is a marked departure from long-settled principles.

It has been an established rule "that equitable jurisdiction existing at the filing of a bill is not destroyed because an adequate legal remedy may have become available thereafter." [8]   *American Life Ins. Co.* v. *Stewart,* 300 U. S. 203, 215.   See *Dawson* v. *Kentucky Distilleries Co.,* 255 U. S. 288, 296.   It has also been long settled that the District Court in its discretion may order the trial of a suit in equity in advance of an action at law between the same parties, even if there is a factual issue common to both.   In the words of Mr. Justice Cardozo, writing for a unanimous Court in *American Life Ins. Co.* v. *Stewart, supra:*

> "A court has control over its own docket. . . .   In the exercise of a sound discretion it may hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and the issues are the same. . . .   If request had been made by the respondents to suspend the suits in equity till the other causes were disposed of, the District Court could have considered whether justice would not be

---

[8] The suggestion by the Court that "This was because the subsequent legal action, though providing an opportunity to try the case to a jury, might not protect the right of the equity plaintiff to a fair and orderly adjudication of the controversy" is plainly inconsistent with many of the cases in which the rule has been applied.   See, *e. g., Beedle* v. *Bennett,* 122 U. S. 71; *Clark* v. *Wooster,* 119 U. S. 322.

done by pursuing such a course, the remedy in equity being exceptional and the outcome of necessity. . . . There would be many circumstances to be weighed, as, for instance, the condition of the court calendar, whether the insurer had been precipitate or its adversaries dilatory, as well as other factors. In the end, benefit and hardship would have to be set off, the one against the other, and a balance ascertained." 300 U. S. 203, 215–216.[9]

### III.

The Court today sweeps away these basic principles as "precedents decided under discarded procedures." It suggests that the Federal Rules of Civil Procedure have somehow worked an "expansion of adequate legal remedies" so as to oust the District Courts of equitable jurisdiction, as well as to deprive them of their traditional power to control their own dockets. But obviously the Federal Rules could not and did not "expand" the substantive law one whit.[10]

Like the Declaratory Judgment Act, the Federal Rules preserve inviolate the right to trial by jury in actions historically cognizable at common law, as under the Constitution they must.[11] They do not create a right of trial

---

[9] It is arguable that if a case factually similar to *American Life Ins. Co.* v. *Stewart* were to arise under the Declaratory Judgment Act, the defendant would be entitled to a jury trial. See footnote 7. But cf. 5 Moore's Federal Practice (2d ed.), p. 158.

[10] Congressional authorization of the Rules expressly provided that "Said rules shall neither abridge, enlarge nor modify the substantive rights of any litigant." 48 Stat. 1064. See 28 U. S. C. § 2072.

[11] "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U. S. Const., Amend. VII. See Rules 38, 39, Fed. Rules Civ. Proc.

by jury where that right "does not exist under the Constitution or statutes of the United States." Rule 39 (a). Since Beacon's counterclaim was compulsory under the Rules, see Rule 13 (a), it is apparent that by filing it Beacon could not be held to have waived its jury rights.[12] Compare *American Mills Co.* v. *American Surety Co.*, 260 U. S. 360. But neither can the counterclaim be held to have transformed Fox's original complaint into an action at law.[13] See *Bendix Aviation Corp.* v. *Glass*, 81 F. Supp. 645.

The Rules make possible the trial of legal and equitable claims in the same proceeding, but they expressly affirm the power of a trial judge to determine the order in which claims shall be heard. Rule 42 (b). Certainly the Federal Rules were not intended to undermine the basic structure of equity jurisprudence, developed over the centuries and explicitly recognized in the United States Constitution.[14]

For these reasons I think the petition for a writ of mandamus should have been dismissed.

---

[12] This is not, of course, to suggest that the filing of a permissive "legal" counterclaim to an "equitable" complaint would amount to a waiver of jury rights on the issues raised by the counterclaim.

[13] Determination of whether a claim stated by the complaint is triable by the court or by a jury will normally not be dependent upon the "legal" or "equitable" character of the counterclaim. See Borchard, Declaratory Judgments (2d ed.), p. 404. There are situations, however, such as a case in which the plaintiff seeks a declaration of invalidity or noninfringement of a patent, in which the relief sought by the counterclaim will determine the nature of the entire case. See Moore's Federal Practice (2d ed.) § 38.29.

[14] "The judicial Power shall extend to all Cases, in Law and Equity . . . ." Art. III, § 2.