Niamke KEYS, et al., Plaintiffs,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,
Defendant.

No. CIV. 01–2619(RJL).

United States District Court,
District of Columbia.

Aug. 30, 2003.

Corliss Vaughn Adams, Robert L. Bell, Bell & Adams, Washington, DC, for Plaintiffs.

Jay R. Goldman, Washington Metropolitan Area Transit Authority, Office of General Counsel, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court is plaintiffs' self-styled motion for a "preliminary injunction." "Plaintiffs—Niamke Keys ("Keys") and Sherri D. Sims ("Sims")—filed this motion on October 1, 2002, almost one year after filing their complaint in this case." They ask this Court to enjoin the defendant, Washington Metropolitan Area Transportation Authority ("WMATA"), "from taking any further action in retaliation against Plaintiffs and to create a non-hostile work environment for Plaintiffs ... in ... WMATA's Component Shop until such time as the Court may hear and decide Plaintiffs' case on the merits." Pls.'s Mot. at 1. Because plaintiffs have failed to show the existence of any irreparable, let alone imminent, harm, the Court denies plaintiffs' motion for a preliminary injunction.

## STATEMENT OF FACTS

Plaintiffs Niamke Keys and Sherri D. Sims are both employees of WMATA, and have been employed by WMATA since 1984 and 1986, respectively. In the underlying second amended complaint filed in

this Court on January 3, 2002,[1] both plaintiffs claim that they have suffered discrimination on the basis of their race (African American); sexual harassment; retaliation; and a hostile work environment on the basis of both sex and race due to the actions of their colleagues and supervisors at WMATA.

In their motion for injunctive relief, plaintiffs contend that even though they both have been on extended leaves of absence (Sims since August 2002 and Keys since August 2001) immediate injunctive relief is necessary as they continue to suffer repeated and ongoing acts of retaliation. However, neither has cited an example of any such conduct that has occurred after their leave of absence commenced and is now ongoing. Indeed Keys—who has been on leave from WMATA since August 2001 due to emotional distress— lists the *same* acts of alleged discriminatory conduct in her motion for a preliminary

injunction that she included in her complaint, some of which occurred as long as seven years ago.[2] Keys argues that injunctive relief is now required so that she can "return to a non-hostile work environment." Pls.'s Mot. at 16.

As to Sims, WMATA denies that the events that occurred *after* plaintiffs' amended complaint was filed and which culminated in her medical leave of absence were the result of discrimination or retaliation by its employees.[3] Indeed, her supervisors all state in their affidavits that they have no intention of terminating Sims' employment or encouraging Sims to resign once she has recovered from the condition which is the basis of her medical leave. *See* Morford Aff. ¶ 9; Matthews Aff. ¶ 11; Thompson Aff. ¶ 10.

## STANDARD OF REVIEW

To obtain preliminary injunctive relief, plaintiffs must demonstrate the follow-

---

1. Plaintiffs filed their original complaint on December 17, 2001.

2. Plaintiff Keys, like Sims, is currently on leave from WMATA. Keys contends that her doctor forced her to take leave beginning in August 2001 in order to recover from emotional distress caused by the retaliation and harassment she experienced at WMATA. Both in the amended complaint and in her motion for preliminary injunction, Sims makes the following allegations: that WMATA supervisors gave her unfavorable work assignments when other workers of comparable seniority, or less, did not receive those assignments; that she was forced to work with a WMATA employee whom she had accused of sexually harassing her; that supervisors gave her poor work evaluations and harassed her in retaliation for complaints Keys filed with the Equal Employment Opportunity Commission ("EEOC"); that supervisors gave her tasks which they knew would be impossible for Sims to physically perform; and that she was physically assaulted by a supervisor. In response to these events, Keys claims that she filed grievances with WMATA and the District of Columbia Office on Human Rights ("DCOHR"), as well as complaints with the

EEOC. Keys alleges that WMATA's Office of Civil Rights found there was "sufficient evidence to support a probable cause finding that the reassignment of ... Keys ... was a 'violation of WMATA's Equal Opportunity Policy ...' "

3. Sims claims that in July 2002, she was assigned to a WMATA work station (i.e., the "Brentwood Paint Booth" or "Ramp") that was unsafe and dangerous due to the presence of toxic fumes. *See* Sims Aff. ¶¶ 8–9. While working there, she claims she was the subject of harassment by her supervisors and co-workers and became ill from the paint fumes. *See id.* ¶ 8. At some point in early August 2002, while seeking medical attention for her adverse reaction to the fumes, she was required to submit to a drug test due to her supervisor's alleged belief that she was either under the influence of drugs, or alcohol, while at work. During the pendency of the drug testing, Sims was diagnosed by a psychiatrist as suffering from an "adjustment disorder with anxious/depressive mood due to work related stress." *Id.* at ¶ 25. She has been on leave from WMATA due to this disability since September 18, 2002. *See id.* ¶ 30.

ing four factors: 1) a substantial likelihood of success on the merits; 2) that they would suffer irreparable injury if the defendant were not enjoined; 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest favors issuing an injunction. *See CityFed Financial Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir. 1995); *Mova Pharmaceutical Corp. v. Shalala,* 140 F.3d 1060, 1066 (D.C.Cir. 1998). Plaintiffs need not make an equally strong showing as to each factor. Rather, the "factors should be viewed as a continuum—more of one factor compensating for less of another." *See Brown v. Artery,* 654 F.Supp. 1106, 1114 (D.D.C.1987). *See also Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843–44 (D.C.Cir.1977); *Massachusetts Law Reform Institute v. Legal Services* Corp., 581 F.Supp. 1179, 1184 (D.D.C.1984), *aff'd,* 737 F.2d 1206 (D.C.Cir. 1984). For the reasons set forth below, the Court finds that plaintiffs have not satisfied the test set forth in *City Fed,* therefore, their motion for preliminary injunction is denied.

## ANALYSIS

■ Plaintiffs argue that they "will suffer irreparable harm if Defendant WMATA is *allowed to continue to retaliate against them* ... while their cases are pending before this Court." Pls.'s Mot. at 3 (emphasis added). Contrary to plaintiffs' assertion, however, the alleged retaliation by WMATA is neither ongoing nor continuing. Plaintiff Sims has been on leave from WMATA for almost one year; Plaintiff Keys for almost two. Plaintiff Sims argues that since she took leave, WMATA retaliated against her by applying its Medical Absenteeism policy in a discriminatory manner in order to prevent her from returning to work. However, as WMATA shows in its papers and exhibits, Sims failed to provide the necessary documentation of her medical leave in a timely manner, and she has been cleared by WMATA to return to work at any time.[4] Any harm that occurred to Sims took place at least ten months ago, and neither Sims nor Keys offers evidence to show that WMATA or its employees have threatened or retaliated against the plaintiffs in any way since that time. Plaintiff Keys does not even allege that any acts of discrimination or retaliation have occurred since the amended complaint was filed. Quite simply, there is no imminent harm the Court can enjoin.[5]

Furthermore, even if plaintiffs' allegations were true, any economic harm plaintiffs have suffered due to their leaves of absence from work is best remedied, as WMATA contends, through monetary damages, rather than injunctive relief. In *Beacon Theatres Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (emphasis added), the Supreme Court made clear that the "basis of injunctive relief in the federal courts has always been irreparable harm and *inadequacy of legal remedies.*" Here, in their amended complaint, plaintiffs have sought a total of $6,000,000.000 in compensatory and punitive damages. Assuming, *arguendo,* plaintiffs' claims survive defendant's pending motion to dismiss, a legal remedy is available to plaintiffs to compensate them for

---

4. *See* Matthews Aff. ¶¶ 10–11. *See also* Def.'s Opp'n Exh. "Department of Human Resources Office of Labor Relations Supervisor's Labor Relations Manual May 1997 (setting forth procedures for substance testing at work site)."

5. If WMATA were actively preventing defendant from returning to work by currently engaging in threats or other forms of retaliation, injunctive relief might be appropriate. However, this is not the case.

the past occurrences of retaliation and discrimination.

As plaintiffs are unable to make any showing of irreparable injury absent injunctive relief, the Court must deny plaintiffs' motion for preliminary injunction.

For the reasons set forth above, the Court hereby DENIES plaintiffs' motion for preliminary injunction.

SO ORDERED.