**The SOUTHLAND CORPORATION, Plaintiff,**

v.

**McClure GODETTE, and Edith Godette, Defendants.**

**Civ. A. No. 91–999 (GHR).**

United States District Court, District of Columbia.

May 11, 1992.

---

Mark L. Spooner, Peggy L. Twohig, Arnold & Porter, Washington, D.C., for plaintiff.

Richard D. Heideman, Andrew F. Oehmann, Jr., Gil Faulk, The Heideman Law Group, P.C., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

REVERCOMB, District Judge.

This case is now before the Court on plaintiff Southland Corporation's ("Southland") Renewed Motion for Preliminary Injunction. Defendants McClure Godette and Edith Godette ("the Godettes"), after obtaining new counsel, opposed this Renewed Motion, and both parties have been heard in oral argument. Upon consideration of the prior proceedings in this case, the instant Renewed Motion and the parties' briefs, and arguments of counsel at a hearing held May 11, 1992, the Court will deny Southland's request for interim injunctive relief. The Court will also order the parties to proceed to arbitration pursuant to the arbitration clause in the governing Franchise Agreement.

## I. BACKGROUND OF THE CASE

Southland is a Texas Corporation which owns the 7–Eleven service mark and convenience store system. On or about March 26, 1985, Southland entered into a Franchise Agreement with the Godettes to operate a 7–Eleven convenience store located at 333 Hawaii Avenue, N.E., in Washington, D.C.

Pursuant to the Franchise Agreement, the Godettes agreed to pay a franchise fee to Southland, invest in the initial inventory of merchandise in the store, and to maintain a specified minimum equity interest or "Net Worth" in the inventory at all times. The Godettes are responsible for operating the store on a day-to-day basis and for the expenses associated with its operation. They are also responsible for keeping and submitting accurate, daily reports of sales receipts to Southland, depositing the store's sales receipts on a daily basis into an account controlled by Southland, keeping Southland advised of their retail selling prices and prices rung up on cash registers, and permitting Southland to conduct audits of the inventory, supplies, and cash register records. The Franchise Agreement also requires the Godettes to use only containers that bear the distinctive 7–Eleven identification for items that are customarily sold in standardized containers.

For its part, Southland agreed to provide the Godettes with a license of the 7–Eleven service mark and trademarks, a variety of items and services on an ongoing basis, advertising, merchandising and promotional assistance, financing to assist the Godettes' continuing purchases of merchan-

dise and payments of operating expenses, and payment for certain major repairs, maintenance, and utility expenses. The Franchise Agreement provides that the Godettes are to receive 48 percent of the store's gross profits, from which they would pay their expenses, and that Southland would receive the remaining 52 percent, from which it would pay for the real estate, equipment, bookkeeping, and other services.

The Franchise Agreement provided that it would expire on September 30, 1997, unless terminated by either party at an earlier date. The Godettes were permitted to terminate the contract at any time on three days' notice; Southland was permitted to terminate in the event of material breaches by the Godettes, and it was required to provide 45, 30, or 3 days' prior notice, depending on the nature of the breach.

Finally, the Franchise Agreement also contains an arbitration clause, which provides in relevant part that

*[a]ny controversy* relating to this Agreement which the parties cannot mutually resolve (*including tort* as well as contract claims, claims based upon *any* federal, state, or local statute, law, order, ordinance, or regulations, and claims arising from any relationship prior to, at the time of entering, during the term of, or upon or after expiration or termination of this Agreement) *shall be* settled by individual arbitration in accordance with the rules of the American Arbitration Association, except that possessory or receivership claims under Paragraph 6 and requests for specific performance of this Agreement *pending arbitration* may be filed in court.

Pl.'s Verified Complt., Ex. 1 ¶ 31 (emphasis added). This provision further provides that a demand for arbitration shall be made within 10 days after a 30–day or longer notice of termination, or prior to any other notice of termination becoming effective, if the demand is based in whole or in part on termination of the Franchise Agreement.

On April 29, 1991, Southland served the Godettes with a final notice of termination of the Franchise Agreement, informing them that the contract would be terminated as of May 2, 1991 at 7:00 Southland then filed, on May 2, 1991, a Verified Complaint for Declaratory Judgment, Injunction, Damages and Other Relief ("the Complaint"). The Complaint alleged that, since 1989, the Godettes had misrepresented to Southland the sales volume and gross profits of the store, with the intent to embezzle funds from the store and to deprive Southland of its contractual share of the profits. The Complaint contained allegations that the Godettes had tampered with cash register receipts, erased cumulative sales figures from cash registers, engaged in under-ringing sales on cash registers, failed to price-mark merchandise accurately, failed to inform Southland of the actual prices they were charging for goods sold, under-reported sales of coffee and carbonated beverages, and engaged in other actions designed to defraud Southland. The Complaint contained various counts, including claims for breach of contract, fraud and embezzlement, violation of trademark rights, replevin, unlawful detainer, and the nonapplicability of the District of Columbia Franchising Act of 1988.

Simultaneously with the filing of its Complaint, Southland moved for a preliminary injunction and a temporary restraining order, seeking, among other things, immediate possession of the store. The parties were heard in an evidentiary hearing before then-District Judge Michael Boudin. By Memorandum Opinion and Order dated September 12, 1991, Judge Boudin, while noting the likelihood that Southland would prevail on the merits, denied Southland's request for interim injunctive relief for failure to make a sufficient showing on the criteria of irreparable harm, balance of hardships, and public interest. However, Judge Boudin did invite Southland to return to the court in the event that the monitoring procedures under the Franchise Agreement proved inadequate to protect Southland's interests during the litigation.

This case was reassigned to this Court upon Judge Boudin's resignation. There-

after, on or about March 31, 1992, Southland filed its Renewed Motion, alleging continuing acts of embezzlement and violations of the Franchise Agreement by the Godettes. This Court set a hearing date of May 11, 1992. Southland then filed, on April 21, 1992, a Motion for a Writ of Replevin and an Ex Parte Interim Order Requiring Defendants to Preserve Property. The Court referred this motion to a United States Magistrate–Judge, who granted the Ex Parte Interim Order on that date. After a hearing on April 28, 1992, the Magistrate–Judge granted Southland's application for a Writ of Replevin on May 1, 1992, upon Southland's posting of a surety bond in the amount of $78,000. Pursuant to this writ, Southland removed and took possession of the inventory of the 7–Eleven store at 333 Hawaii Avenue, N.E., although the Godettes remain in possession of the real estate.

During the pendency of Southland's Renewed Motion for a Preliminary Injunction, new counsel entered on behalf of the Godettes. On April 28, 1992, counsel filed on behalf of the Godettes an opposition to Southland's Renewed Motion, which contained a demand under the arbitration clause of the Franchise Agreement. The Godettes' opposition also contained, in the alternative to its arbitration demand, a draft order in the event the Court should grant Southland's request for interim relief. The presence of a draft order in defendants' brief held out the prospect that the parties might negotiate an interim resolution of their differences that would enable Southland to withdraw or hold in abeyance its Renewed Motion. The parties' negotiations proved fruitless, however, and Southland has pressed forward with its request for a preliminary injunction.

## II. ANALYSIS

■ Southland's Renewed Motion requests this Court to order the Godettes to vacate the store entirely so that Southland can run it directly, or, in the alternative, that the Godettes specifically perform under the Franchise Agreement as well as restock the store. The Godettes' principal defense is to invoke the arbitration clause.

Southland's response is to argue that this defense is untimely and has been waived. Southland's request for interim injunctive relief must be denied because it has not shown that it will be irreparably harmed and that the remedies available to it at law are inadequate. Moreover, the Court is persuaded that the dispute between Southland and the Godettes is well within the scope of the Franchise Agreement's arbitration clause, and that Southland's argument that the Godettes have waived their right to arbitration is without merit.

As Southland is no doubt well aware, a plaintiff's request for injunctive relief is assessed by balancing four factors: 1) the plaintiff's potential irreparable harm, 2) the plaintiff's liklihood of success on the merits, 3) the balance of hardships between plaintiff and the defendant, and 4) the public interest. *See Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 746 F.2d 816, 834 (D.C.Cir.1984) (citing *Washington Metropolitan Area Transit Auth. v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir. 1977)). This Court finds itself in agreement with Judge Boudin's conclusion that Southland has demonstrated a likelihood of success on the merits, as well as his conclusion that Southland has failed to demonstrate that, in the absence of the interim relief it seeks, it will suffer irreparable harm. As our court of appeals has made clear, the absence of any showing of irreparable harm may be dispositive of a motion for a preliminary injunction. *See Wisconsin Gas Co. v. Federal Energy Regulatory Comm'n,* 758 F.2d 669, 674 (D.C.Cir.1985). That is the case here.

Southland's injuries are at bottom economic: its contractual share of the gross profits from the operation of the 7–Eleven store, which it claims are being compromised by the continuing malfeasance of the Godettes. It is well-established "that economic loss does not, in and of itself, constitute irreparable harm." *Wisconsin Gas,* 758 F.2d at 674. As our court of appeals has reiterated:

The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and

energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.

*Id.* (quoting *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir. 1958)). Tellingly, in neither its original Motion for a Preliminary Injunction nor in its Renewed Motion does Southland cite a single case showing it to be entitled to injunctive relief for the sorts of harms it claims it has suffered and will suffer pending the outcome of this litigation.

It is, moreover, fundamental that " '[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.' " *Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974) (quoting *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 954–55, 3 L.Ed.2d 988 (1959) ). Not only has Southland failed to show that it will suffer irreparable harm, it also *has* adequate remedies at law. A Writ of Replevin has already been issued to it, by which it has protected its interests in the inventory of the store. Any other losses occasioned by the Godettes' malfeasance or failure to abide by the terms of the Franchise Agreement, if proven, will entitle Southland to recover damages. In short, this is not a case in which the equitable powers of this Court should be invoked.

■ Such a conclusion is all the more warranted given the existence of an arbitration clause in the very Franchise Agreement which Southland now seeks to enforce. This clause by its own terms applies to controversies such as those that are at issue here: breach of contract, fraud and embezzlement (tort claims), claims based upon federal law (the Trade–Mark Act of 1946), and claims based upon state or local law (the D.C. Franchising Act of 1988). Moreover, as the Court reads this provision, arbitration is mandatory and binding in the event the parties cannot mutually resolve their differences: the clause plainly states that "any" such controversies *"shall be* settled by individual arbitration in accordance with the rules of the American Arbitration Association." Pl.'s Ex. 1 ¶ 31

(emphasis added). Finally, Southland's assertion that the Godettes have waived their rights under this clause is without merit. The Godettes have demanded arbitration based upon Southland's issuance of a notice of termination on less than 30 days notice. According to the terms of the arbitration clause, in such cases a demand must be made *"prior to* any other notice of termination becoming effective." *Id.* (emphasis added). Arguably, Southland's termination of the Franchise Agreement has yet to become effective, because Southland still seeks specific performance of its terms against the Godettes. Even if one were to date effective termination from the execution of the Writ of Replevin, on or about May 1, 1992, the Godettes' demand (made April 28, 1992) would still be timely. Southland cannot now simultaneously seek to enforce against the Godettes some of the terms of the Agreement it bargained for while avoiding being itself bound by other terms.

The Court will treat the Godettes' Motion in Opposition to Granting of Preliminary Injunction, filed April 28, 1992, as a petition to compel arbitration pursuant to 9 U.S.C. § 4, which the Court will grant over Southland's oral opposition made at the May 11th hearing. The Court is well satisfied that the arbitration clause in the Franchise Agreement is within the scope of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* and should be given full effect. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989).

Accordingly, it is ORDERED, that plaintiff Southland Corporation's Renewed Motion for a Preliminary Injunction is DENIED; and, it is

FURTHER ORDERED, that the parties are to PROCEED TO ARBITRATION in accordance with the terms of the arbitration clause in the Franchise Agreement executed between the parties the 26th day of March, 1985.