**CITY OF NEW YORK, Plaintiff,**

v.

**BERETTA U.S.A. CORP.;** Browning Arms Co.; Charco 2000, Inc.; Colt's Manufacturing Co., Inc.; Forjas Taurus, S.A.; Glock Inc.; Glock GmbH; Phoenix Arms; Sigarms, Inc.; Sig Arms Sauer GMBH f/k/a J.P. Sauer & Sohn Inc.; Smith & Wesson Corp.; Sturm, Ruger and Co., Inc.; Tanfoglio Fratelli S.R.L.; Taurus International MFG, Inc.; Acusport Corp; Alamo Leather Goods, Inc.; Bangers, L.P.; Bill Hick's and Co., Ltd.; Brazas Sporting Arms, Inc.; Camfour, Inc.; Chattanooga Shooting Supplies, Inc.; Davidson's Supply Co., Inc.; Dixie Shooters Supply Inc.; Ellet Brothers, Inc.; Euclid Avenue Sales Co.; Faber Brothers, Inc.; Glen Zanders Fur and Sporting Goods, Co.; Hicks, Inc.; Kiesler Police Supply, Inc.; Lew Horton Distributing Co., Inc.; Lipsey's, Inc.; MKS Supply, Inc.; Riley's, Inc.;

Ron Shirk's Shooters Supply, Inc.; RSR Group, Inc.; Scott Wholesale Co., Inc.; Southern Ohio Gun, Inc.; Sports South, Inc.; Valor Corp.; Walter Craig, Inc.; and Williams Shooters Supply, Defendants.

**No. 00 CV 3641(JBW).**

United States District Court, E.D. New York.

May 11, 2004.

**194**

Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY, by Eric Proshansky, Richard J. Costa, Violence Policy Center, Washington, D.C., by Mathew Nosanchuk, Weil, Gotshal & Manges, LLP, New York, NY, by Steven A. Reiss, for Plaintiff City of New York.

Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, MD, by Lawrence S. Greenwald, for Defendant Beretta U.S.A. Corp.

Friday, Eldredge & Clark, LLP, Little Rock, AK, by Jonann E. Coniglio, Jamie Huffman Jones, Renzulli, Pisciotti & Renzulli, LLP, New York, NY, by John F. Renzulli, Leonard S. Rosenbaum, for Defendant Browning Arms Co.

Jones Day, Dallas, TX, by Thomas E. Fennell, Michael L. Rice, for Defendant Colt's Manufacturing Co., Inc.

Budd Larner, P.C., Atlanta, GA, by Timothy A. Bumann, Budd Larner, P.C., Short Hills, NJ, by Kathleen Marchetti, for Defendants Forjas Taurus, S.A. and Taurus International Manufacturing, Inc.

Renzulli, Pisciotti & Renzulli, LLP, New York, NY, by John F. Renzulli, Leonard S. Rosenbaum, for Defendant Glock, Inc.

Tarics & Branisa, P.C., Houston, TX, by Michael J. Zomcik, for Defendant Phoenix Arms.

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, New York, NY, by Jan Michael Skidds, for Defendants Sigarms, Inc. And Sig Arms Sauer GMBH f/k/a J.P. Sauer & Sohn, Inc.

Shook Hardy & Bacon, LLP, Kansas City, MO, by Jeffrey S. Nelson, Greenberg Traurig, LLP, New York, NY, by Alan Mansfield, for Defendant Smith & Wesson Corp.

Wildman, Harrold, Allen & Dixon, Chicago, IL, by James P. Dorr, for Defendant Sturm, Ruger & Co., Inc.

Saiber Schlesinger Satz & Goldstein, LLC, Newark, NJ, by David R. Gross, Christopher M. Chiafullo, for Defendants AcuSport Corp.; Alamo Leather Goods, Inc.; Bangers, L.P.; Bill Hicks & Co.; Brazas Sporting Arms, Inc.; Camfour Inc.; Chattanooga Shooting Supplies, Inc.; Davidson's Supply Co., Inc.; Dixie Shooters Supply, Inc.; Ellet Brothers, Inc.; Faber Brothers, Inc.; Glen Zanders Fur and Sporting Goods Co.; Hicks, Inc.; Kiesler Police Supply, Inc.; Lew Horton Distributing Co.; Lipsey's Inc.; Riley's, Inc.; RSR Group, Inc.; Scott Wholesale Co., Inc.; Ron Shirk's Shooter's Supplies, Inc.; Southern Ohio Gun, Inc.; and Sports South, Inc.

Scott L. Braum, Esq., Dayton, OH, by Scott L. Braum, Saiber Schlesinger Satz & Goldstein, LLC, Newark, NJ, by David R. Gross, Christopher M. Chiafullo, for Defendant MKS Supply, Inc.

United States Attorney's Office, Brooklyn, NY, by Elliot M. Schachner, United States Attorney's Office, Central Islip, NY, by Vincent Lipari, for Observer Attorney General of the United States.

## AMENDED MEMORANDUM JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The City of New York sues defendants for abatement of a public nuisance seeking an injunction only. It moves to strike the defendant gun manufacturers' and importers' demand for a jury. For the reasons indicated below, the motion to strike is denied.

■ In deciding whether a jury is required under the Seventh Amendment to the United States Constitution, federal courts are directed to try to place themselves in the position of a judge sitting in 1791, when the right to jury was embedded in the Bill of Rights. *See, e.g., City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 708, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). As the Supreme Court put the matter in *City of Monterey:*

> The Seventh Amendment provides that "in Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." Consistent with the textual mandate that the jury right be preserved, our interpretation of the Amendment has been guided by historical analysis comprising two principal inquires. "We ask, first, whether we are dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was.... If the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791."

*Id.* (quotation omitted).

Since the court practice of the Confederacy was almost nonexistent and the States had been independent of the Crown since 1776, it is the pre–1791 practice in the thirteen colonies that controls. Nevertheless, federal courts tend to look to the more developed and accessible concurrent and earlier British chancery and law court precedents. Early equity cases are often hard to fathom. "Because of the decrescence of independent chancery courts in this country, and the radical refashioning of procedure, modern practitioners are generally familiar only with the hardy survivals of a once complex and characteristic procedural system...." 1 *The Law Practice of Alexander Hamilton* 167 (Julius Goebel Jr. ed., Columbia Univ. Press 1964). Moreover, "movement in the New York Chancery [and that of other states] toward an approximation of English practice was at a slower pace than was the absorption of common law procedure...." *Id.* at 172. "In the last years of the colonial period, practice [was] not as complex as in England...." *Id.* at 173.

New York, as the chief commercial center—and momentary capital—of the United States, had about as well developed an equity procedure and chancellor's practice as any in the new nation. Alexander Hamilton was one of the most learned and successful of its practitioners, having himself published procedural notes to guide other lawyers. His practice, and evidently that of other New York lawyers and judges of the time, dealt with the rather ordinary substantive elements of equity such as those arising from commercial, land and trust controversies. *Id.* at 167. The chancellor served in large measure as a controller of discovery of evidence in pending legal disputes.

Even in bread and butter equity matters, "a chancery court could order that an issue be tried at law 'for the better information and guiding the conscience of the court.' " 2 *The Law Practice of Alexander Hamilton* 78–79 (Julius Goebel Jr. ed., Columbia Univ. Press 1969) (citation omitted). *But see* The Federalist No. 83, at

429 n.1 (Alexander Hamilton) (J.M. Dent & Sons Ltd., 1961) ("It has been erroneously insinuated, with regard to the Court of Chancery, that this court generally tries disputed facts by a jury. The truth is, that references to a jury in that court rarely happen, and are in no case necessary...."). Power of the federal judge to deny what would be a proper bench trial and to utilize juries as triers of the facts in equity cases is carried forward in modern federal practice. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) ("[T]he right to jury trial is a constitutional one ... while no similar requirement protects trials by the court ..."); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2317 (2d ed.1995); Note, *The Right to a Nonjury Trial*, 74 Harv. L.Rev. 1176 (1961).

■■■ In the recent gun nuisance case brought by the National Association for the Advancement of Colored People, the court ruled that when plaintiff sought only an injunction against a public nuisance, defendant was not entitled to a constitutional jury as of right under the Seventh Amendment; the jury used in that case was advisory. *NAACP v. Acusport, Inc.*, 271 F.Supp.2d 435, 464 (E.D.N.Y.2003); *NAACP v. A.A. Arms, Inc.*, 2003 WL 1049011, at *7 (E.D.N.Y. Feb.24, 2003); *NAACP v. Acusport Corp.*, 226 F.Supp.2d 391, 398 (E.D.N.Y.2002). Reliance was placed primarily on the early English equity cases. *NAACP v. Acusport Corp.*, 226 F.Supp.2d at 397 (citing *In re Joint Eastern and Southern Districts Asbestos Litigation*, 878 F.Supp. 473, 518 (E.D.N.Y. 1995) (reception of British equity practice in New York)). The holding in the *NAACP* gun case that a Seventh Amendment jury is not required in an action to abate a public nuisance when only injunctive relief is sought is reaffirmed. No convincing authority challenging its conclusions has been cited. *See* the cases and authorities collected in the excellent briefs of defendants and plaintiff on the instant motion.

Without once again rehearsing the less than limpid historical precedents, it can be said that, viewed through the foggy two century old lens of Seventh Amendment culture, guidance of long dead chancellors on important issues of jury use is delphic at best. *Cf. Brown v. Board of Education*, 347 U.S. 483, 492, 74 S.Ct. 686, 98 L.Ed. 873 (1954) ("We cannot turn the clock back."). One guiding beacon has been lit by the Supreme Court: when in doubt, grant a jury trial. *See, e.g., Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). That advice is useful in the current case.

Of more than passing interest in guiding decision on the issue in the current case is the fact that the plaintiff in the *NAACP* gun case was a private party. Here, one of the world's great cities is challenging the international handgun industry's practices that are alleged to put at unnecessary risk millions of urban residents. The precedential value and impact of such a case is likely to be substantial. A jury is likely to enhance the sense of parties and public that justice has been served—providing the litigation with greater moral as well as legal force. No suggestion has been offered that a jury representative of the citizens of this district would be unqualified to fairly try the issues.

Whether a 1791 chancellor awakened from a Rip Van Winkle over two-hundred-year nap would have utilized any particular form of jury in managing the present case in our current legal system and culture—so different from the one he knew—is necessarily somewhat speculative. Speculation yielding to practicality, the following procedure seems best designed to protect

the rights of all parties to a fair, affordable and prompt resolution: A Seventh Amendment jury will be empaneled to try the case. It will be conducted using evidentiary and procedural norms as in a law case. On appeal, if the appellate court desires findings of fact and law by the bench, the trial court can readily prepare them on remand. With these precautions, a new trial merely on the ground of mischaracterization of the case as legal or equitable seems unlikely.

The motion to strike the defendants' jury demand is denied.

SO ORDERED.