# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PRESTON HOLLOW CAPITAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NUVEEN LLC, NUVEEN | ) | C.A. No. N19C-10-107-MMJ [CCLD] |
| INVESTMENTS, INC., and NUVEEN | ) | |
| ASSET MANAGEMENT LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: September 24, 2020
Decided: December 15, 2020

On Plaintiff Preston Hollow Capital LLC's Motion for Partial Summary
Judgement

**GRANTED IN PART and DENIED IN PART**

## OPINION

R. Scott Thompson, Esq. (Argued), David H. Wollmuth, Esq., Michael C. Ledley, Esq., Sean P. McGonigle, Esq., Nicole C. Rende, Esq., Wollmuth, Maher & Deutsch LLP, New York, New York, R. Judson Scaggs, Jr., Esq., Elizabeth A. Mullin, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, *Attorneys for Plaintiff Preston Hollow Capital LLC*.


Leonard A. Gail, Esq. (Argued), Alejandra Contreras Macias, Esq., Massey & Gail LLP, Chicago, Illinois, Jonathan S. Massey, Esq. (Argued), Jeremy Mallory, Esq., Massey & Gail LLP, Washington, DC, Peter J. Walsh, Jr., Esq., Jennifer C. Wasson, Esq., David A. Seal, Esq., Robert J. Kumor, Esq., Potter, Anderson & Corroon LLP, Wilmington, Delaware, *Attorneys for Defendants Nuveen LLC, Nuveen Investments, Inc., and Nuveen Asset Management LLC*.

**JOHNSTON, J.**

## FACTUAL AND PROCEDURAL CONTEXT

### *Parties*

This is a defamation action based on statements made by one business competitor about another. Plaintiff Preston Hollow Capital LLC ("Preston Hollow") is a Delaware limited liability company that operates nationally.[1] Defendants Nuveen LLC and Nuveen Asset Management LLC are Delaware limited liability companies that operate globally.[2] Defendant Nuveen Investments, Inc. is a Delaware corporation that operates globally as well (collectively, "Nuveen").[3]

### *The Municipal Bond Market*

Preston Hollow and Nuveen are both institutional investors involved in the high-yield municipal bond market. Preston Hollow currently has approximately $2.1 billion in assets and $1.3 billion in equity capital.[4] Nuveen has approximately $150 billion in assets.[5]

Municipal bonds are classified as either "investment-grade" or "high yield" depending on the default risk and return rate.[6] Bonds can be issued as: (1) public offerings, which are open to all investors; (2) limited public offerings, which are

---

[1] *Preston Hollow Capital LLC v. Nuveen LLC, et.al.*, 2020 WL 1814756, \*2 (Del. Ch.) ("*Nuveen I*").
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id*. at 5-6.

open to a select group of investors who meet established standards; or (3) private placements, which are non-publicized offers made directly to an individual investor.[7] A "100% placement" transaction occurs when a single investor purchases the entirety of a bond's issuance.[8]

Municipal bond issuances generally involve an issuer, a broker-dealer, and an investor.[9] The nature of this business requires investors to have close relationships with broker-dealers in order to receive the most competitive opportunities. Preston Hollow and Nuveen work closely with a number of broker-dealers.[10] These relationships are vital to their continued success and participation in the municipal bond market.

### *Communications Between Nuveen and Broker-Dealers*

During late 2018 and early 2019, three Nuveen employees, John Miller, Karen Davern, and Steven Hlavin, spoke with various broker-dealers about Preston Hollow.[11] Audio tapes exist for the conversations between: (1) Hlavin and Deutsche Bank on December 20, 2018; (2) Miller and Deutsche Bank on December 21, 2018; and (3) Miller and Goldman Sachs ("Goldman") on December 21, 2018.[12] Three

---

[7] *Id*. at 6-7.
[8] *Id*. at 7.
[9] *Id*. at 6.
[10] *Id*. at 8.
[11] Defendant's Answering Brief in Opposition to Plaintiff's Partial Summary Judgment Motion ("AB"), at 6.
[12] *Id*. at 6-7.

3

particular sets of conversations are at issue in this motion.[13]  Where necessary, the contents of all conversations Nuveen had regarding Preston Hollow are referred to collectively as "Nuveen's Statements."[14]

### *Recorded Conversations Between Nuveen and Deutsche Bank*

During two recorded calls made on December 20, 2018, Hlavin told Deutsche Bank that "Preston Hollow was 'demonstrating predatory lending practices' toward borrowers and would 'take the [borrowers] into bankruptcy.'"[15]  Hlavin additionally told Deutsche Bank that "he possessed 'direct evidence'" that Preston Hollow "lied to issuers."[16]  The next day, Miller called Deutsche Bank and stated in another recorded conversation that "Preston Hollow conducted unethical business practices, or 'dirty deals.'"[17]  Miller "labeled Preston Hollow's lending practices as 'predatory'" and claimed that Preston Hollow "'rushed' broker-dealers through deals without allowing for proper evaluation."[18]  The contents of these conversations will be referred to collectively as the "Statements Made to Deutsche Bank."

### *Recorded Conversations Between Nuveen and Goldman*

---

[13] Preston Hollow and Nuveen have grouped these statements together in their briefs. However, the Court finds that it is necessary to break up Nuveen's conversations with the broker-dealers based on whether the calls were recorded or not and who the listener was.

[14] The statements from all conversations were grouped together cumulatively as "the Adjudicated Statements" in Preston Hollow's briefs and "the Alleged Statements" in Nuveen's briefs. Regardless of the label, each grouping is substantively the same.

[15] *Nuveen I*, at *6.

[16] *Id.*

[17] *Id.*

[18] *Id.*

4

During a recorded phone call on December 21, 2018, "Miller told Goldman that Preston Hollow lied to issuers."[19] Miller additionally told Goldman that: (1) "issuers fell for Preston Hollow's 'predatory practices' after hearing its 'predatory sales pitch'"; (2) "issuers are being told things that are not true"; (3) "Preston Hollow would 'rush the issuer into' unfair or suspect transactions"; and (4) "he had 'a lot of evidence' to support the allegations."[20] As part of his "evidence," Miller stated that "multiple states' attorneys general had contacted Preston Hollow over 'unethical practices,' sent it 'nastygrams,' and told it '[d]on't come into my town again.'"[21] The contents of this conversation will be referred to as the "Statements Made to Goldman."

### *Unrecorded Conversations*

In addition to the recorded conversations, Nuveen discussed Preston Hollow in a series of conversations which were not recorded. Between December 2018 and February 2019, Nuveen employees discussed Preston Hollow in unrecorded conversations with JPMorgan Chase & Co., Mesirow Financial, Stifel Nicolaus, and Wells Fargo.[22] Nuveen additionally discussed Preston Hollow with KeyBanc

---

[19] *Id*. at *8.
[20] *Id*.
[21] *Id*.
[22] *Id*. at *5.

Capital Markets in April 2018.[23]  The contents of these various conversations will be referred to collectively as the "Statements Made in Unrecorded Conversations."

### *Preston Hollow Responds to Nuveen's Statements*

On January 15, 2019, Preston Hollow wrote a letter to Nuveen demanding that it "cease and desist from what [Preston Hollow] characterize[d] as unlawful and tortious communication" and "undertake other steps to prevent asserted harms."[24] Nuveen responded by sending letters to the legal departments of several broker-dealers, which stated in part:

> Nuveen does not and will not seek any arrangement or commitment from your firm concerning the counterparties it does business with.  We fully acknowledge your firm is free to conduct its trading business in a manner and with firms and counterparties of your choosing…  With respect to [Preston Hollow] specifically, and for the avoidance of doubt, Nuveen seeks no agreement or commitment from your firm regarding [Preston Hollow]… of course, Nuveen reserves the right to conduct its trading business with firms within its lawful discretion and to hold and express its views and judgments in pursuing its investment advisory and trading activities.[25]

### *Procedural History*

Following the issuance of Nuveen's letter, Preston Hollow filed suit against Nuveen in the Court of Chancery on February 28, 2019.[26]  Preston Hollow asserted

---

[23] *Id.*
[24] AB at 7.
[25] AB at 8.
[26] *Nuveen I*, at *11.

claims for: (1) tortious interference with contract; (2) tortious interference with prospective business relations; (3) violation of New York's Donnelly Act; and (4) defamation.[27] Preston Hollow additionally sought preliminary and permanent injunctions to prevent Nuveen from further discussing Preston Hollow with any broker-dealers.[28]

The Court of Chancery denied preliminary injunctive relief on March, 14, 2019.[29] The Court of Chancery dismissed Preston Hollow's claim for tortious interference with contract on May 14, 2019.[30] Preston Hollow's defamation claim was dismissed on July 11, 2019, with leave to transfer the claim to this Court.[31] Preston Hollow re-filed its defamation claim in this Court on October 11, 2019.[32]

On November 5, 2019, this Superior Court action was stayed while the litigation continued in the Court of Chancery. The parties went to trial for the tortious interference of prospective business relations and Donnelly Act claims on July 29-30, 2019.[33] Vice Chancellor Glasscock issued his opinion on April 9, 2020.[34]

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at *12.
[31] AB at 9.
[32] *Id.* at 9-10.
[33] *Nuveen I*, at *12.
[34] *Id.*

After the conclusion of the Court of Chancery action, Preston Hollow filed the present Motion for Summary Judgment on June 29, 2020.[35] The Court heard oral argument on September 17, 2020. Counsel for Preston Hollow and Nuveen submitted post-argument letters on September 24, 2020.[36]

### *Chancery Decision in Nuveen I*

After the parties lodged 37 depositions, submitted 832 joint exhibits, and presented witnesses over two days of trial, the Court of Chancery: (1) declined to rule on the Donnelly Act claim; (2) held that Nuveen committed tortious interference with Preston Hollow's prospective business relations; and (3) held that Preston Hollow was not entitled to a permanent injunction.[37]

The Court of Chancery found "that Nuveen used threats and lies in a successful attempt to damage [Preston Hollow] in its business relationships."[38] When analyzing the tortious interference claim, the Court of Chancery first found that Preston Hollow had a reasonable probability of business opportunity because it either already had a formalized relationship with each broker-dealer or it had transactions in the works.[39] Second, the Court of Chancery found that Nuveen intentionally interfered with Preston Hollow's business opportunities through

---

[35] Trans. ID 65731736.
[36] Trans. ID 659663167 and 65962666.
[37] *Nuveen I*, at *22.
[38] *Id*. at *1.
[39] *Id*. at *13.

8

economic pressure.[40] Vice Chancellor Glasscock stated that there was a "common theme" where "Nuveen called broker-dealers and told them to stop doing business with Preston Hollow or face consequences—including . . . losing their business with Nuveen."[41] Third, Nuveen's interference proximately caused Preston Hollow harm by causing it to lose business with Goldman, JPMorgan, KeyBanc, Mesirow, Stifel, and Wells Fargo.[42] The Court of Chancery did not find causation for Deutsche Bank or Morgan because neither broker-dealer reduced its business with Preston Hollow after speaking with Nuveen.[43] Finally, the Court of Chancery found that Preston Hollow demonstrated it was harmed by Nuveen's actions because broker-dealers quit working with Preston Hollow altogether, reduced the number of deals with Preston Hollow, and refused to conduct 100% placements with Preston Hollow without letting Nuveen review the deals first.[44] Therefore, Preston Hollow had met the elements for its claim.

The Court of Chancery pointed out that tortious interference with prospective business relations is "unusual" because "its application, even if [the] elements are met, is circumscribed by consideration of competing rights. Thus, the elements of the tort must be considered in light of a defendant's privilege to compete in a lawful

---

[40] *Id*. at *14-15.
[41] *Id*. at *14.
[42] *Id*. at *15.
[43] *Id*. at *16.
[44] *Id*. at *17.

manner."[45] However, the privilege to compete does not apply where a defendant's actions are "wrongful."[46] In this context, "wrongful" action includes misrepresentations and economic pressure.[47]

With respect to the Statements Made to Goldman, the Court of Chancery found:

> Nuveen told Goldman that Preston Hollow lied to its issuers, and it promised it had evidence to support this allegation when it had only rumors from the trading desk. This amounts to a reckless indifference to the truth. Similarly, allegations that Preston Hollow's "unethical practices" had "caught the attention of the states' attorney[s] general[]" who sent "nastygrams," was a misrepresentation of the "evidence" Miller actually possessed: a single letter from a single city attorney. Miller's testimony that this lie was "a little bit of a shortcut" does not keep it from constituting a knowing misrepresentation intended to interfere with Preston Hollow's business.[48]

With respect to the economic pressure applied by Nuveen, the Court of Chancery found:

> [C]ommunications with each of the individual broker-dealers may evince limited—that is, non-tortious—economic pressure; the choice to refrain from business with a third-party who conducts business with a competitor. The facts revealed in litigation, however, show that as Preston Hollow was becoming a contender in the high-yield municipal bond market, Nuveen, the self-styled "largest high-yield [municipal] fund in the world," sought an industry-wide agreement not to conduct business with Preston Hollow. Although part of Nuveen's motive was its interest in

---

[45] *Id.* at *12.
[46] *Id.* at *17.
[47] *Id.*
[48] *Id.* at *17.

"seeing all the deals," its behavior shows that its object was also an attack directed at Preston Hollow's ability to operate. The evidence demonstrated an aggressive and widely dispersed campaign to use almost any pressure necessary to cut off a competitor from its chief source of business as well as its financing. I find that Nuveen was not simply attempting to achieve a competitive edge; it meant to use the leverage resulting from its size in the market to destroy Preston Hollow.[49]

The misrepresentations and economic pressure amounted to "wrongful" conduct.[50] Thus, the Court of Chancery held that Nuveen remained liable for its tortious interference with prospective business relations.[51]

### SUMMARY JUDGEMENT STANDARD

Summary judgment is granted only if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[52] All facts are viewed in a light most favorable to the non-moving party.[53] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if there is a need to clarify the application of law to the specific circumstances.[54] When the facts permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law.[55] If the non-

---

[49] *Id.* at *19.
[50] *Id.* at *17-19.
[51] *Id.* at *19.
[52] Super. Ct. Civ. R. 56(c).
[53] *Burkhart v. Davies*, 602 A.2d 56, 58–59 (Del. 1991).
[54] Super. Ct. Civ. R. 56(c).
[55] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).

11

moving party bears the burden of proof at trial, yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment may be granted against that party.[56]

## ANALYSIS

### *Preston Hollow's Contentions*

Preston Hollow moves for partial summary judgment on defamation liability for Nuveen's Statements. Preston Hollow contends that the factual findings made by the Court of Chancery in its decision are binding on this case through the application of either collateral estoppel or law of the case. Preston Hollow further contends that the Court of Chancery's findings should be used to meet the first three elements of defamation, specifically, that Nuveen made and published defamatory statements concerning Preston Hollow. Finally, Preston Hollow urges the Court to find that the fourth element of its defamation claim—that the third-parties understood the communication to be defamatory—is met because Nuveen's Statements constitute defamation *per se*.

### *Nuveen's Contentions*

Nuveen argues in response that neither collateral estoppel nor law of the case are applicable here. Further, even if one of those doctrines applied, Preston Hollow

---

[56] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

12

still would not be entitled to partial summary judgment. Nuveen insists that law of the case does not apply here because that doctrine concerns only legal findings, not factual findings. As the Court of Chancery's findings at issue here are factual, and not purely legal, they are not the law of the case. Further, Nuveen maintains that collateral estoppel should not apply because: (1) the Court of Chancery's judgement rested on two independent bases, therefore neither basis is preclusive; (2) the factual findings were not necessary or essential to the result; and (3) factual findings made by a judge cannot be binding on a subsequent jury. Finally, even if the findings related to Nuveen's Statements are binding on this case, there are remaining factual disputes which prevent the entry of summary judgment, including how the third-parties understood Nuveen's Statements and whether Preston Hollow is a limited purpose public figure.

### *Law of the Case*

Law of the case is a judicially-created doctrine which prevents parties from relitigating issues that have been decided at a prior point. "The law of the case doctrine, like the *stare decisis* doctrine, is founded on the principle of stability and respect for court processes and precedent."[57] "Once a matter has been addressed in a procedurally proper way by a court, it is generally held to be the law of that case

---

[57] *Gannett Co. v. Kanaga*, 750 A.2d 1174, 1181 (Del. 2000).

13

and will not be disturbed by that court unless a compelling reason to do so appears."[58] For law of the case to apply, the case must be "one continuous action within the same court system."[59]

A point of contention in the post-argument letters submitted by the parties is whether law of the case applies only to legal determinations or whether it applies to both legal *and* factual determinations. Preston Hollow cited a number of cases that held factual findings are subject to law of the case.[60] Nuveen cited a number of cases that held the doctrine applies only to legal findings.[61]

Application of the law of the case doctrine is not dependent upon whether the same judge presides throughout all proceedings. As a general matter, a successor judge will adhere to the prior rulings of other judges who have acted in the same case. This is necessary to "prevent the harassing of the court with matters which have been once heard and decided." Such deference is "founded upon additional considerations of courtesy and comity."[62]

This case was transferred by the Court of Chancery to the Superior Court pursuant to 10 *Del. C.* § 1902. Although the docket numbers and judicial officers

---

[58] *Zirn v. VLI Corp.*, 1994 WL 548938, at *2 (Del. Ch.).

[59] *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co.*, 2015 WL 5278913, at *8 (Del. Ch.).

[60] *See Ins. Corp. of America v. Barker*, 628 A.2d 38, 40 (Del. 1993); *Williams Cos., Inc. v. Energy Transfer LP*, 2020 WL 3581095, at *1 n.3 (Del. Ch.); *Kleinberg v. Aharon*, 2017 WL 4444216, *1 (Del. Ch.).

[61] *See Advanced Litigation, LLC v. Herzka*, 2006 WL 2338044, at *5 (Del. Ch.); *Izquierdo v. Sills*, 2004 WL 2290811, at *4 n.28 (Del. Ch.).

[62] *Frank v. Carol*, 457 A.2d 715, 719 (Del. 1983) (citing 132 A.L.R. 14, 15 (1941)).

are different, such a transfer does not create an entirely new action. For purposes of law of the case, the prior rulings of the Court of Chancery are treated as if they were made by a Superior Court judge.

The Court finds that there is no meaningful distinction between factual findings and legal conclusions when applying law of the case. Particularly when a judicial officer acts as both factfinder and presiding judge, there is no reason to give greater deference to legal determinations than to factual findings.

It is clear that Vice Chancellor Glasscock carefully and fully considered the issues presented to him. This Court holds that appropriate deference must be given to decisions made by the Court of Chancery. The law of the case doctrine applies to the Chancery Court's factual determinations. This Court further finds that the Vice Chancellor did not have wholly separate and distinct bases for his conclusions. Rather, the findings were considered in combination and were necessary to prior decisions.

However, applying law of the case to the Court of Chancery's prior rulings is not the same as this Court finding that those evidentiary conclusions are defamation. Whether or not the established evidence proves defamation is a matter left to the Superior Court. This Court must determine the legal impact and consequences of conduct found by the Court of Chancery to be a "lie" or "wrongful" or "unethical."

## *Collateral Estoppel*

"Pursuant to the doctrine of collateral estoppel, if a court has decided an issue of fact necessary to its final judgment, that decision precludes relitigation of the issue in a suit on a different cause of action involving a party to the first case."[63] "The test for applying the collateral estoppel doctrine requires that (1) a question of fact essential to the judgment (2) be litigated and (3) determined (4) by a valid and final judgment."[64] Even where a party meets the elements for collateral estoppel, its preclusive effect will not be applied if "its application causes an injustice to the precluded party."[65] Courts retain the discretion to not apply collateral estoppel if doing so would be unfair to the precluded party.[66]

Preston Hollow asks this Court to find that collateral estoppel applies to all of the statements made by Nuveen. However, the statements cannot be grouped together entirely and must be addressed separately.

### *Collateral Estoppel Does Not Apply to Statements Made to Deutsche Bank*

Preston Hollow only seeks to apply collateral estoppel to one statement made by Nuveen to Deutsche Bank. Preston Hollow argues that Nuveen should be "estopped from disputing either the existence, falsity, or malicious nature of"

---

[63] *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999), *as modified on denial of reargument* (May 27, 1999) (quoting *Messick v. Star Enterprise*, 655 A.2d 1209, 1211 (Del. 1995)).
[64] *Id.*
[65] *Ingram v. 1101 Stone Assocs.*, LLC, 2004 WL 691770, at *8 (Del. Super.).
[66] *Chrysler Corp. v. New Castle Cty.*, 464 A.2d 75, 81-84 (Del. Super. 1983).

Hlavin's statement to Deutsche Bank that he had "direct evidence" that Preston Hollow "lied to borrowers."[67] Preston Hollow contends that Hlavin's statement is "materially identical to statements to Goldman deemed by Vice Chancellor Glasscock to be fraudulent."[68]

This statement to Deutsche Bank was not part of Vice Chancellor Glasscock's analysis. The full extent of the Court of Chancery's discussion of this statement is one sentence from the facts section: "In a second call with Deutsche later that day, Hlavin claimed he possessed 'direct evidence' of Preston Hollow's lies, though it is apparent from his testimony that he based this statement on what he overheard at Nuveen's trading desk."[69] Even if this could be properly characterized as a "finding," it is not the sort of finding that is meant to be covered by collateral estoppel. Because the Court of Chancery determined that Nuveen had not tortiously interfered with Preston Hollow's relationship with Deutsche Bank, Hlavin's statement was not included in the discussion of Nuveen's "wrongful" conduct. It is apparent from the opinion that Hlavin's statement was not necessary or essential to the Court of Chancery's final judgment. Therefore, the portion of Preston Hollow's motion requesting that collateral estoppel be applied to the Statements Made to Deutsche Bank must be denied.

---

[67] Plaintiff's Opening Brief in Support of its Motion for Summary Judgment ("OB"), at 25.
[68] *Id*. at 26.
[69] *Nuveen I*, at *6.

## *Collateral Estoppel Does Not Apply to Statements Made in Unrecorded Conversations*

Nuveen discussed Preston Hollow with: (1) JPMorgan around December 20, 2018; (2) Wells Fargo in January 2019; (3) Keybank in April 2018; (4) Stifel in October 2018; and (5) Mesirow around December 2018.[70] The Court of Chancery found that "the meetings and phone calls that went unrecorded were cut from the same cloth [as the recorded conversations] and demonstrate a specific intent to disrupt the relationships between broker-dealers and Preston Hollow."[71] While Vice Chancellor Glasscock considered the contents of these unrecorded conversations when finding that Nuveen committed tortious interference, there was no in-depth analysis of individual statements.[72]

Preston Hollow asks this Court to find Nuveen is "estopped from disputing either the existence, falsity, or malicious nature" of the statements made in the unrecorded conversations.[73] However, Preston Hollow has failed to point to any *specific* statement. The Court simply will not bar Nuveen from litigating the "existence, falsity, or malicious nature" of statements if it does not know what the precise statements are. As defamation relies on specific statements, it would be fundamentally unfair to Nuveen to bar them from disputing that any statements were

---

[70] *Nuveen I*, at *15.
[71] *Id.*
[72] *Id.*, generally.
[73] OB at 26.

made during the unrecorded conversations. Whether or not Preston Hollow could meet the elements of collateral estoppel for the Statements Made in Unrecorded Conversations, the Court will not apply collateral estoppel offensively because its application would cause an injustice to Nuveen. Therefore, the portion of Preston Hollow's motion requesting that collateral estoppel be applied to the Statements Made in Unrecorded Conversations must be denied.

### Collateral Estoppel Applies to Statements Made to Goldman

The only substantive statements that the Court of Chancery analyzed in-depth were the statements made by Miller to Goldman. When determining whether Nuveen's conduct was "wrongful," such that it would negate Nuveen's privilege to complete in a lawful manner, Vice Chancellor Glasscock considered whether the statements were misrepresentations.[74] A misrepresentation is improper if it is fraudulent.[75] Fraudulent intent is shown where a misrepresentation is "made either knowingly, intentionally, or with reckless indifference to the truth."[76] The Court of Chancery found that the statements made by Nuveen were wrongful misrepresentations because: (1) Miller's statement that Preston Hollow lied to issuers, when all he had as evidence was a rumor from the trading desk, was made with reckless indifference to the truth; and (2) Miller's statement that Preston

---

[74] *Nuveen I* at *17.
[75] *Id.*
[76] *Id.* (internal citation omitted).

19

Hollow's "unethical practices" had "caught the attention of the states' attorneys general" who sent "nastygrams" was a knowing misrepresentation.[77]

Nuveen first argues that the elements of collateral estoppel are not met because Vice Chancellor Glasscock's factual findings about the Statements Made to Goldman were not necessary or essential to the judgement. Nuveen next argues that even the elements of collateral estoppel are met, it cannot be applied because nonjury factual findings are not binding on a subsequent jury factfinder. The Court will address each argument separately.

### *A. Essential to Judgment*

Almost all of the elements for collateral estoppel are undisputed. Findings related to the Statements Made to Goldman were questions of fact, litigated and determined by the Court of Chancery. As the time for appeal has passed, Vice Chancellor Glasscock's opinion is a valid and final judgment. Nuveen's argument against applying collateral estoppel rests on the final element—whether the findings were necessary and essential to the Court of Chancery's judgment.

Nuveen argues that "the fact that the ultimate judgment was the denial of [Preston Hollow]'s petition demonstrates that the subsidiary findings [about the statements to Goldman] were not necessary for the judgment."[78] However, the Court

---

[77] *Id.*
[78] AB at 13.

of Chancery's judgment was not limited to the denial of Preston Hollow's petition for injunctive relief. The Court of Chancery's final judgment had three parts: (1) a holding that Nuveen committed tortious interference with Preston Hollow's prospective business relations; (2) a refusal to address the alleged violation of New York State's Donnelly Act; and (3) a holding that Preston Hollow was not entitled to a permanent injunction because it failed to prove that Nuveen was continuing to contact broker-dealers about it.[79] This Court finds that the Statements Made to Goldman, and the related findings, were necessary for the first part of the Court of Chancery's judgment—determining whether Nuveen committed tortious interference with prospect business relations.

Nuveen next argues that the findings—that Nuveen made misrepresentations—are not preclusive. Nuveen contends that the Court of Chancery had two separate and distinct bases for concluding that Nuveen committed tortious interference—that Nuveen made misrepresentations and that it applied improper economic pressure.[80] Nuveen cites the Restatement (Second) of Judgments which states that "[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either

---

[79] *Nuveen I*, at *22.
[80] AB at 14-19.

issue standing alone."[81] Therefore, Nuveen argues, since the Court of Chancery could have found tortious inference based on its misrepresentations *or* its economic pressure, standing alone, neither issue is preclusive.

This Court finds that there is nothing in the opinion to suggest that the Vice Chancellor viewed Nuveen's misrepresentations and economic pressure independently. Rather, the related findings were considered in combination. The Court of Chancery took *all* of Nuveen's actions and viewed them cumulatively when considering whether Nuveen committed tortious interference with prospective business relations. While the Court of Chancery did analyze both issues separately when determining whether Nuveen's tortious actions were "wrongful,"[82] it is important to note that this discussion was part of a seven factor balancing test. The balancing test required the Court of Chancery to view different factors of Nuveen's actions *cumulatively* to determine whether they were "wrongful."

The Court finds that Nuveen's misrepresentations were necessary and essential to the Court of Chancery's judgment. Therefore, Preston Hollow has met all the elements of collateral estoppel with regard to the Statements Made to Goldman.

---

[81] § 27, cmt. i.

[82] *Nuveen I*, at *17-19.

## B. Nonjury Factual Findings

Having found that the Statements Made to Goldman meet the elements for collateral estoppel, the Court must turn to Nuveen's second argument. Nuveen posits that the Court of Chancery's factual findings are not subject to collateral estoppel because of the nature of the Court of Chancery proceeding. Nuveen argues that nonjury factual findings are not binding on a subsequent jury factfinder. Therefore, the Vice Chancellor's findings cannot be given deference in this Superior Court action, which will be before a jury.[83] This is especially true, Nuveen states, in a defamation claim because "'longstanding public policy' recognizes that '[c]harges of slander are peculiarly adapted to and require trial by jury'"[84] which "is why courts 'historically have reserved determinations of falsity and malice for the collective wisdom of a jury rather than cast a judge as the sole arbiter of defamation.'"[85]

The Court recognizes the unique policy considerations which surround a defamation claim and agrees that defamation findings ideally are left to a jury. However, the preference for findings to be made by a jury does not necessarily mean that factual findings made by a judge cannot ever be binding on a subsequent jury.

---

[83] AB at 22-25.

[84] *Id*. at 23 (quoting *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 125 (Del. Ch. 2017)).

[85] *Id*. (quoting *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *5 & n.50 (Del. Ch.)).

23

## U.S. Supreme Court Precedent Supports Collateral Estoppel

In *Parklane Hosiery Co., et. al. v. Shore*,[86] the United States Supreme Court was faced with "the question whether a party who has had issues of fact adjudicated adversely to it in an equitable action may be collaterally estopped from relitigating the same issues before a jury in a subsequent legal action brought against it by a new party."[87] Stockholders had brought a class action suit against Parklane, as well as 13 of its officers and its directors, after the corporation issued a materially false and misleading proxy statement.[88] Before the stockholders' lawsuit went to trial, the Securities and Exchange Commission (SEC) brought its own suit against the same defendants in a Federal District Court, alleging that the proxy statement was materially false and misleading.[89] The SEC sought injunctive relief, which was granted following a determination that the statement was materially false and misleading as alleged.[90]

Following the resolution of the SEC's case, the stockholders filed a motion for summary judgment arguing that Parklane was collaterally estopped from relitigating issues which had been resolved against it in the SEC case.[91] The District Court denied the motion on the grounds that applying collateral estoppel would

---

[86] 439 U.S. 322 (1979).
[87] *Id*. at 324.
[88] *Id*.
[89] *Id*. at 324.
[90] *Id*. at 324-25.
[91] *Id*. at 325.

deprive Parklane of its Seventh Amendment right to a jury trial.[92]  The Court of Appeals for the Second Circuit reversed the decision, stating that "the Seventh Amendment preserves the right to jury trial only with respect to issues of fact, [and] once those issues have been fully and fairly adjudicated in a prior proceeding, nothing remains for trial, either with or without a jury."[93]  Parklane appealed and the Supreme Court granted certiorari.[94]

In its analysis, the Supreme Court looked to the history of the right to a jury and how that right has been addressed in case law.  First, the Supreme Court stated that "the thrust of the [Seventh] Amendment was to preserve the right to jury trial as it existed in 1791" and "[a]t common law, a litigant was not entitled to have a jury determine issues that had been previously adjudicated by a chancellor in equity."[95] The Supreme Court then discussed *Beacon Theatres, Inc. v. Westover*.[96] The Court found that "[i]t is . . .clear that the Court in the *Beacon Theatres* case thought that if an issue common to both legal and equitable claims was first determined by a judge, relitigation of the issue before a jury might be foreclosed by res judicata or collateral estoppel."[97]    Finally, the Supreme Court cited *Katchen v. Landy*,[98] which

---

[92] *Id.*

[93] *Id.* (citing *Shore v. Parklane Hosiery, Inc.*, 565 F.2d 815, 819 (2nd Cir. 1977)).

[94] *Id.*

[95] *Id.* at 333 (internal citations omitted).

[96] 359 U.S. 500 (1959).

[97] *Parklane*, 439 U.S. at 334.

[98] 382 U.S. 323 (1966).

"recognized that an equitable determination can have collateral-estoppel effect in a subsequent legal action and that this estoppel does not violate the Seventh Amendment."[99] Despite Parklane's arguments to the contrary, the Supreme Court ultimately held that the factual findings from the equitable SEC action were subject to collateral estoppel in the stockholders' legal action.[100]

### Delaware Precedent Supports Collateral Estoppel

Delaware courts echo the holding of *Parklane* and have found that factual findings made by the Court of Chancery are binding in subsequent Superior Court actions.[101] In *Stephenson v. Capano Development, Inc.,* the Delaware Supreme Court addressed how collateral estoppel applied to a fraud claim.[102] Stephenson purchased a townhouse from Capano Development.[103] When there was an issue with the sale—numerous people had paid deposits for the same townhouse as Stephenson—Stephenson sued Capano for specific performance in the Court of Chancery.[104] Two days before trial was set to begin, Stephenson amended her complaint to add a claim for violations of the Deceptive Trade Practices Act and

---

[99] *Parklane*, 439 U.S. at 335.
[100] *Id*. at 337.
[101] *See Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1075 (Del. 1983) (giving collateral estoppel effect to factual findings made by the Court of Chancery in a subsequent Superior Court action); *Arch Ins. Co. v. Murdock*, 2017 WL 1129110, at *8 (Del. Super.) (same).
[102] 462 A.2d at 1069.
[103] *Id*. at 1072.
[104] *Id*.

Consumer Fraud Act.[105] Because this amendment was untimely, the Court of Chancery declined to address the violation claims but noted that this refusal should not be construed as any finding on the merits of Stephenson's claims.[106] The Court of Chancery did, however, find that Stephenson had an option contract to purchase the townhouse and entered a decree of specific performance against Capano.[107]

Following the Court of Chancery's decision, Stephenson filed an action before this Court raising the same claims for violation of the Acts.[108] This Court concluded that the factual findings made by the Court of Chancery were to be given collateral estoppel effect in the subsequent action but that the judgment would not be subject to res judicata because the Court of Chancery did not reach the merits of the fraud claims.[109] This Court entered judgment for Capano and Stephenson appealed.[110]

Upon review, the Delaware Supreme Court agreed that the factual findings made by the Court of Chancery were entitled to collateral estoppel.[111] Since Capano was "collaterally estopped from denying that it misrepresented the circumstances [related to the sale of the townhouse]," the Supreme Court found Stephenson had shown that Capano violated the Consumer Fraud Act.[112]

---

[105] *Id.*
[106] *Id.*
[107] *Id.*
[108] *Id.*
[109] *Id.*
[110] *Id.*
[111] *Id.* at 1073.
[112] *Id.* at 1075.

## The Restatement Supports Collateral Estoppel

As a final source of guidance, the Court looks to the Restatement (Second) of Judgments. Delaware courts often have turned to the Restatement.[113] Nuveen and Preston Hollow both rely on this source.[114] The Restatement provides that "[t]he determination of an issue by a judge in a proceeding conducted without a jury is conclusive in a subsequent action *whether or not* there would have been a right to a jury in that subsequent action if collateral estoppel did not apply."[115] Under the Restatement, the findings made by the Vice Chancellor, without a jury, are conclusive in this subsequent action even though Nuveen has demanded a jury trial.

The Court holds that nonjury factual findings may be binding on a subsequent jury factfinder. The Court of Chancery's findings that are entitled to collateral estoppel treatment are binding on this Court and any jury factfinder.

## Applying Collateral Estoppel is Not Unfair

The Court finds that applying collateral estoppel to the Statements Made to Goldman would not be unfair to Nuveen.[116] Unlike with the Statements Made in Unrecorded Conversations, Nuveen is well aware of the substance of the statements

---

[113] *See Stephenson*, 462 A.2d at 1073 (citing § 27 cmt. e); *Pagliara v. Fed. Nat'l Mortg. Ass'n*, 2017 WL 2352150, at *3 (Del. Ch.) (citing § 27); *Riley v. Hershey*, 1988 WL 40015, at *2 (Del. Super.) (same); *Danner v. Hertz Corp.*, 1985 WL 552292, at *2 (Del. Super.) (same); *Pritchett v. Heym*, 1988 WL 47307, at *1 (Del. Super.) (same).

[114] OB at 28-29; AB at 13, 15-16, 22.

[115] § 27 cmt. d (emphasis added).

[116] *See Chrysler*, 464 A.2d at 81-84.

made by Miller to Goldman. These statements were recorded and adequately addressed by the Court of Chancery. Nuveen had an opportunity to fully litigate the "existence, falsity, and malicious nature" of the Statements Made to Goldman, and it did so vigorously. Therefore, Nuveen is not unfairly impacted by applying collateral estoppel to this narrowly tailored set of statements.

The Court finds that the statements made by Miller to Goldman shall be given collateral estoppel effect in this action. Nuveen is estopped from relitigating the "existence, falsity, and malicious nature" of either of these statements: (1) that Preston Hollow lied to its issuers and that Nuveen had evidence of such lies; and (2) that Preston Hollow's "unethical practices" had "caught the attention of the states' attorneys general" who sent "nastygrams." Therefore, the portion of Preston Hollow's motion requesting that collateral estoppel be applied to the Statements Made to Goldman must be granted.

### *Defamation*

In order to succeed on a claim for defamation, a plaintiff must show that: "(1) the defendant made a defamatory statement; (2) concerning the plaintiff; (3) the statement was published; and (4) a third party would understand the character of the communication as defamatory."[117] The defendant's defamatory statements must

---

[117] *Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005).

29

cause the "plaintiff's standing in the community [to be] grievously fractured."[118] Where the plaintiff is a corporation, it must additionally "show that the defamatory statements tend to prejudice the corporation in its business or to deter others from dealing with it."[119] Finally, where the plaintiff is a limited purpose public figure, it must show that the defamatory statement is false and that the defendant made the statement with actual malice.[120]

While the Court of Chancery's findings related to the Statements Made to Goldman will be given deference in this action, it does not follow that this Court must necessarily find Nuveen liable for defamation at this stage. The Court of Chancery's findings are certainly relevant to Preston Hollow's defamation claim, but are not sufficient to impose liability. It is left to the Superior Court to determine the legal impact of Nuveen's conduct.

The Court of Chancery's findings show that Preston Hollow meets the first three elements of the defamation claim. *Nuveen I* decided that Nuveen made damaging statements concerning Preston Hollow and that the statements were published when Nuveen communicated them to Goldman. Preston Hollow argues that the final element—that Goldman understood the statements as defamatory—is

---

[118] *Q-Tone Broad., Co. v. Musicradio of Maryland, Inc.*, 1994 WL 555391, at *4 (Del. Super.) (citation and quotation omitted).
[119] *Id.*
[120] *Doe*, 884 A.2d at 463.

30

met by the Court of Chancery's finding that Nuveen committed tortious interference with Preston Hollow's prospective business relations.

However, this finding is not the legal equivalent of a third-party understanding for the purposes of this motion. The Court of Chancery did not directly address how the statements were understood by Goldman. The Court of Chancery did not specifically consider how the statements were understood and thus could not have made any subsequent findings. Third-party understanding is a separate and distinct element of defamation which Preston Hollow must prove and Nuveen must be permitted to challenge. Therefore, the Court finds that a genuine issue of material fact exists precluding a ruling of defamation liability as a matter of law.

There are a number of additional factual disputes that make summary judgement inappropriate. One question is whether Preston Hollow suffered any reputational loss. "A communication is defamatory 'if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'"[121] Nuveen states that discovery is necessary to "elicit evidence on…whether [Preston Hollow's] already poor reputation in the municipal bond market meant that [Nuveen's Statements] could not

---

[121] *Agar v. Judy*, 151 A.3d 456, 470 (Del. Ch. 2017) (quoting *Spence v. Funk*, 396 A.2d 967, 969 (Del. 1978)).

have defamed it."[122]  Preston Hollow does not address this argument in its briefs but alleges in its complaint that Nuveen's Statements caused irreparable harm.[123]

Another dispute is whether Nuveen's Statements constitute defamation *per se*. "The general rule is that oral defamation is not actionable without special damages."[124]  However, statements which "malign one in a trade, business or profession" are a "category of defamation, commonly called slander *per se*, which [is] actionable without proof of special damages."[125]  Preston Hollow posits that Nuveen's Statements are defamation *per se* because they "malign[ed] [Preston Hollow] in a trade, business, or profession."[126]  Nuveen argues that "the evidence from the Chancery trial shows that [Nuveen's Statements] did not prejudice [Preston Hollow] in its business or deter others from dealing with it"[127] and thus Preston Hollow must show special damages.  Nuveen further states that whether a given statement qualifies as defamation *per se* is a question of fact that must be proven by Preston Hollow, not merely alleged.[128]

A further dispute is whether Preston Hollow is a limited purpose public figure. Where a plaintiff suing based on defamation is a limited purpose public figure, the

---

[122] AB at 3.
[123] Compl. ¶ 85.
[124] *Spence*, 396 A.2d at 970-71.
[125] *Id.*
[126] Compl. ¶ 92; OB at 22.
[127] AB at 32-33.
[128] *Id.*

plaintiff has a higher burden of proof. In addition to proving the standard elements of a defamation claim, the plaintiff must show that the statement at issue is false and that the defendant made the statement with actual malice.[129] Nuveen contends that Preston Hollow is a limited purpose public figure because it has "'thrust [itself]' to the forefront of a debate over trading practices in municipal bonds, with important implications for taxpayers and the public at large."[130] Preston Hollow argues in response that the press coverage related to this case is not enough to transform it into a limited purpose public figure because "asserting one's legal rights against defamation and tortious interference by an aggressor who happens to be well-known is hardly thrusting oneself into a public controversy."[131]

The Court need not, and indeed cannot, resolve these disputes now. For the purpose of determining whether Preston Hollow is entitled to summary judgment, it is enough that these disputes simply exist. Therefore, the portion of Preston Hollow's motion seeking a ruling of defamation liability must be denied.

## CONCLUSION

The doctrines of law of the case and collateral estoppel are both rooted in the same policy considerations of fairness, judicial efficiency, and respect for the

---

[129] *Doe*, 884 A.2d at 463.
[130] AB at 34 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)).
[131] Plaintiff's Reply Brief in Support of its Motion for Summary Judgment at 22.

considered decisions of the judiciary. Functionally, both doctrines prevent relitigation of issues by parties.

The Court finds that there is no meaningful distinction between factual findings and legal conclusions when applying the law of the case. The law of the case doctrine applies to the Chancery Court's factual determinations. This Court further finds that the Vice Chancellor did not have wholly separate and distinct bases for his conclusions. Rather, the findings were considered in combination and were necessary to prior decisions.

However, applying law of the case to the Court of Chancery's prior rulings is not the same as this Court finding that those evidentiary conclusions are defamation. Whether or not the established evidence proves defamation is a matter left to the Superior Court. This Court must determine the legal impact and consequences of conduct found by the Court of Chancery to be a "lie" or "wrongful" or "unethical." **THEREFORE**, the law of the case doctrine applies as set forth herein.

The Court finds that collateral estoppel does not apply equally to all of the statements made by Nuveen. The first set of statements, those made by Nuveen to Deutsche Bank, were not necessary and essential to the Court of Chancery's final judgment. The statements made in the unrecorded conversations have not been sufficiently identified and thus cannot be given deference. The final set of statements, those made to Goldman, are entitled to collateral estoppel because they

34

were necessary and essential to the Court of Chancery's decision. **THEREFORE**, Preston Hollow's motion requesting collateral estoppel is hereby **DENIED** as to the Statements Made to Deutsche Bank and the Statements Made in Unrecorded Conversations; and **GRANTED** as to the Statements Made to Goldman.

While the Court of Chancery's findings apply to a portion of Preston Hollow's defamation claim, the Court finds that genuine issues of material fact exist: first, how the statements made by Nuveen were understood by Goldman; second, whether Preston Hollow suffered any reputational loss; third, whether the statements made by Nuveen constitute defamation *per se*; and fourth, whether Preston Hollow is a limited purpose public figure. These issues preclude a holding of defamation liability as a matter of law. **THEREFORE,** Preston Hollow's motion requesting a finding of defamation liability is hereby **DENIED**.

Nuveen is barred from relitigating: (1) the existence of the Statements Made to Goldman; (2) the falsity of those statements; and (3) the fact that those statements were made with either knowledge of their falsity or reckless indifference to the truth.

**THEREFORE**, Preston Hollow's Motion for Partial Summary Judgment is hereby **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

                        */s/ Mary M. Johnston*
                    The Honorable Mary M. Johnston